# EXHIBIT A

EXHIBIT A

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

Propria persona

DISTRICT COURT

CLARK COUNTY, NEVADA

A-15-718200-C
XIII

**PRISCILLA SANTOS CORTEZ,**

Plaintiff,

vs.

NATIONSTAR MORTGAGE, LLC; QUALITY LOAN SERVICING, LLC; WEST COAST MORTGAGE GROUP; ALLIANCE BANCORP; AURORA BANK, FSB; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ROSE VELLANOWETH; and DOES 1-10, inclusive,

Defendants.

**CIVIL CASE NO.**

**VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**

1. **Fraud in the Factum;**
2. **Violations of the Truth in Lending Act;**
3. **Rescission;**
4. **Unfair Lending Practices Under N.R.S. Chapter 598D;**
5. **Violation of the Fair Debt Collection Practices Act Under N.R.S. Chapter 649;**
6. **Improper Foreclosure Under the Deed of Trust;**
7. **Violations of Nevada Revised Statutes N.R.C.P. 17(a)**
8. **Unfair Business Practices;**
9. **Quiet Title**

[Ex Parte Application for TRO and Preliminary Injunction filed contemporaneously herewith]

Comes now, Priscilla Santos Cortez, (hereinafter, "Plaintiff"), appearing "pro per," and claims alleges and complains to this Honorable Court as follows:

**I. Parties**

**A. Plaintiff**

1. Plaintiff Priscilla Santos Cortez, is an individual, who, at all times relevant to

this Complaint has been a citizen of the State of Nevada, and the legal and rightful owner of record of, and resided in the real property commonly described as: 1020 Zurich Avenue, Henderson, NV 89015, located in Clark County, with the legal description of:

> Lot Eight (8) in Block A of BOULDER CREEK 11, as shown by map thereof on file in Book 124 of Plats, Page 72, in the Office of the County Recorder of Clark County, Nevada.

A.P.N. 179-16-812-008, (hereinafter, the "Subject Property").

**B. <u>Defendants</u>**

2. Defendant, WEST COAST MORTGAGE GROUP, ("WCMG"),is a mortgage loan brokering company, organized and operating under the laws of California, not registered to do business in the State of Nevada during the brokering of this loan, with its principle business offices located at 2716 Broadway, Sacramento, CA 95818.

3. Defendant, ALLIANCE BANCORP, Inc., ("ALLIANCE"), is a corporation organized and operating under the laws of Nevada, Entity Number C2478-2002, whose corporate status is currently "revoked," and who filed for Chapter 7 Bankruptcy on July 13, 2007, less than a year after this loan. ALLIANCE's principle business offices located at 541 Lawrence Rd., Broomall, PA 19008.

4. Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), is a corporation organized and operating under the laws of Delaware, with its principle business offices located at 1818 Library Street, Suite 300, Reston, VA 20190.

5. Defendant, AURORA BANK, FSB, ("AURORA"), is a corporation organized and operating under the laws of the United States, with its principle business offices located at 1000 N. West Street, Suite 200, Wilmington, DE 19801.

6. Defendant Nationstar Mortgage, LLC, ("NATIONSTAR") is a corporation organized and operating under the laws of Texas, with its registered agent in Nevada known as

and located at: CSC SERVICES OF NEVADA, INC., 2215-B Renaissance Drive, Las Vegas, NV 89119

7.     Defendant QUALITY LOAN SERVICE, LLC, ("QUALITY") is a corporation organized and operating under the laws of California, with its registered agent in Nevada known as and located at: Kristin A. Schuler-Hintz, 9510 W. Sahara Avenue, Las Vegas, NV 89117.

8.     Defendant ROSE VELLANOWETH, "VELLANOWETH" is an individual, believed to reside in the State of Nevada, who, at all relevant times to this Complaint was employed by Defendant WCMG, but her current physical address is unascertainable by Plaintiff.

9.     Defendant DOEs 1-10 are individuals whose names, addresses and States of residence are currently unknown to the Plaintiff, but who are believed to have forged signatures on a series of documents officially recorded against the Subject Property.

10.     Plaintiff will request leave to amend to add these names and addresses when such are ascertained.

## II.     JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this controversy pursuant to Article 6, section 6 of the Nevada Constitution.

12.     This Court has personal jurisdiction over the Defendants inasmuch as said Defendants are conducting business in the State of Nevada.

13.     Venue is proper in this Court pursuant to because the controversy involves real property located in the County of Clark, State of Nevada and the actions and omissions complained of occurred within this District.

## III.     STATEMENT OF FACTS

14.     Evidence of the Plaintiff's ownership of the Subject Property originates with a "GRANT, BARGAIN, SALE DEED" dated January 10, 2006, "in consideration of $10.00 and other valuable consideration, the receipt of which [was] . . . acknowledged", from Grantors: WOODSIDE PRESERVE AT BOULDER CREEK, LLC, A NEVADA LIMITED LIABILITY COMPANY, to Grantees: RICHARD EVALOBO, a married man as his sole and separate property and PRISCILLA SANTOS CORTEZ, a married woman as her sole and separate property both as joint tenants, filed 01/17/2006 in the Clark County Recorder's Office under Instrument Number: 20060117-0003644.

15.     The GRANT, BARGAIN, SALE DEED describes the Subject Property.

16.     Subsequently, Richard Evalobo executed a "Quit Claim" Deed, quit claiming all his interest in the subject property to Plaintiff, leaving her the sole legal, recorded owner of the Subject Property.

17.     Plaintiff, in seeking financing for the Purchase of the Subject Property, completed a Uniform Residential Loan Application with the assistance of a broker, Defendant Vellanoweth, employed by Defendant WCMG.

18.     As part of the loan package, Plaintiff was provided numerous disclosures and documents, including the Truth in Lending Act Statement, (TILA Form) and a final closing statement (Closing Statement).

19.     The initial TILA form disclosed the terms as 7.260% APR, the amount financed as $405,150.00, the finance charge as $601,277.82, the total of payments as $1,006,427.62, with 24 payments of $2,447.78, 335 payments of $2,820.48, and 1 payment of $2,820.10.

20.     The final TILA form disclosed the terms as 7.720% APR, the amount financed as $393,985.38, the finance charge as $691,178.44, the total of payments as $1,085,163.82, with 24 payments of $2,447.78, 96 payments of $2,532.19, 239 payments of $3,263.86, and a

final payment of $3,264.32.

21. The Closing Statement disclosed the following fees and charges:

a. $6,077.25 – Loan Origination Fee – WCMG;

b. $475.00 – Appraisal Fee to WCMG

c. $500.00 – Broker Processing Fee to WCMG

d. $300.00 – Administrative Fee – WCMG

e. $495.00 – Underwriting Fee - ALLIANCE

f. $295.00 – Document Fee – ALLIANCE

g. $89.00 – Tax Service Fee – ALLIANCE

h. $2,025.75 – Yield Spread Premium (1st)- WCMG

i. $125.50 – Yield Spread Premium (2nd) – WCMG

For a total of $9,378.00 to WCMG and a total of $879.00 to ALLIANCE.

22. The Uniform Underwriting Transmittal Summary disclosed a Loan to Value ratio of 80.000%, and the combined, total loan total value ratio of 89.991%.

23. Plaintiff was led to believe she was applying and receiving a "conventional loan," as that boxed was checked on the Uniform Residential Loan Application.

24. The Appraisal was conducted at a cost of $475.00 and the Subject Property was appraised higher than the actual value, based upon an artificially created curve based upon Defendants greed as opposed to actual value.

25. The appraised value exceeded the actual value by at least $45,000.

26. On information and belief, Plaintiff alleges said appraiser inflated the appraisal of the Subject Property, either unilaterally to ensure the closing, or due to pressuring from ALLIANCE, Vellanoweth, and/or an as yet identified entity sued herein as DOE #1.

27. On or about January 5, 2006, Plaintiff signed the Promissory Note, ("NOTE")

naming ALLIANCE as the Lender, with absolutely no reference to MERS or any other entity to pay.

28.    The terms stated on the face of the actual NOTE were $405,150.00, for 360 months, at an interest rate of 7.250%; ARM type loan.

29.    Subsequently, February 6, 2009, ALLIANCE was closed, filed for bankruptcy, and ceased to exist.

## IV.    OFFICIAL RECORDS OF CLARK COUNTY, NEVADA

30.    The NOTE was secured with a first Deed of Trust, ("DEED"), dated January 5, 2006, recorded January 17, 2006, under Instrument No. 20060117-0003647.  Defendant ALLIANCE is the Lender on the DEED, and MERS is the nominee beneficiary for ALLIANCE, "solely with regard to the [DEED]."

31.    Subsequently, a "Corporate Assignment of Deed of Trust" (CADOT), was signed on September 8, 2011, by Pamela J. Pedersen, "Vice President" of MERS, as nominee for ALLIANCE, notarized same day by Deb Seibert in Scotts Bluff, Nebraska.

32.    The CADOT claimed to transfer all beneficial interest in the NOTE and DEED from MERS as nominee for ALLIANCE to AURORA.

33.    The CADOT was recorded by AURORA on November 15, 2011, under Instrument No. 201111150002906.

34.    Subsequently, an "Assignment of Deed of Trust" ("ADOT"), was signed on April 27, 2012, by Clint Vail, "Assistant Secretary" of NATIONSTAR, claiming to act as "attorney in fact" for Aurora!, notarized the same day in Danton, Texas.

35.    The ADOT claimed to transfer all beneficial interest in the NOTE and DEED from AURORA to NATIONSTAR.

36.    The ADOT was recorded in the Clark County Recorder's Office on December

4, 2012, as Instrument No. 201212040002280.

37.     Subsequently, a Substitution of Trustee, ("SOT"), was signed on December 18, 2012, by Stephanie Fuentes, "Assistant Secretary" for QUALITY, acting as "attorney in fact" for NATIONSTAR.

38.     The SOT claims to substitute QUALITY for the original Trustee under the DOT.

39.     The SOT was recorded in the Clark County Recorder's Office on December 20, 2012, as Instrument No. 20121220004110.

40.     Subsequently, a Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust, ("NOD") was signed by Stephanie Fuentes, "Assistant Secretary" of QUALITY.

41.     The NOD claims Plaintiff defaulted on the original amount of $405,150.00, with installments of principle and interest becoming due on May 1, 2011.

42.     The NOD did not provide all required notices and language consistent with the DOT.

43.     December 17, 2014, the NOD was recorded in the Clark County Recorder's Office as Instrument No. 20141217-0000019.

44.     Subsequently, around April 10, 2015, QUALITY sent a Notice of Trustee's Sale to Plaintiff at the Zurich Home.

45.     The Notice threated a sale on April 24, 2015, and it is believed that sale has occurred, as a document titled "3 day notice to quit" was posted to Plaintiff's door after the 24th.

A.  **THE SECURITIZATION**

46.     Though ALLIANCE was listed as the "Lender" on the NOTE and

MORTGAGE, Plaintiff is informed and believes and thereon alleges ALLIANCE was in fact, an "originating broker" in the LEHMAN XS TRUST SERIES 2006-3 securitization transaction.

47. As an originating broker, ALLIANCE entered into a myriad of contracts, whereby the actual funds ALLIANCE allegedly wired as part of her obligation in this mortgage loan transaction were provided by a different entity, and ALLIANCE pre-sold its interests in the NOTE and DOT.

48. With the designation "Lender," rather than "originating broker," and a "Conventional Loan," ALLIANCE was able to ensnare Plaintiff in a loan whose terms are literally unconscionable.

49. Between January 5, 2006 and February 28, 2006, and ALLIANCE sold all its interest in NOTE, without recourse to Lehman Brothers Holding Inc., (as "Seller"), who in turn sold the same to Structured Asset Securities Corporation, (as "Depositor"), and thereafter, between and February 1, 2006 (the "cut-off date") and February 28, 2006 (the "closing date"), it was placed into LEHMAN XS 2006-3, as an asset for issuance of certificates against same.

50. The Pooling and Servicing Agreement, ("PSA") for the Lehman XS 2006-3 securitized trust[1] empowered U.S. Bank, N.A. as the "Trustee" and AURORA as "Servicer," explicitly limited the actions U.S. Bank, N.A. as Trustee and AURORA as Servicer could take with regard to assets of the Trust, and contained numerous relevant clauses and mandatory provisions.

51. On September 8, 2011 AURORA purportedly purchased all beneficial interest in the NOTE and DEED from MERS as nominee for ALLIANCE, (who already sold such in 2006, and ceased to exist in 2009), who in turn was claiming to sell such unilaterally, as

---

[1] Available from the SEC at http://www.secinfo.com/d12TC3.v9qv.d.htm.

opposed to "as nominee" for Defendant ALLIANCE.

52. The ADOT was executed over four (4) years after the cut-off date of the LEHMAN XS 2006-3 Trust, and recorded almost two years ***past*** the two year limit explicitly delineated in the PSA.

53. According to mandated Securities and Exchange Commission disclosures by NATIONSTAR, (available for download at: **http://www.sec.gov/Archives/edgar/data/1507951/000119312512306813/d381728dex994.htm**):

> On March 6, 2012, we entered into an asset purchase agreement (as subsequently amended, the "Aurora Purchase Agreement") with Aurora Bank FSB, a federal savings bank organized under the laws of the United States, and Aurora Loan Services LLC, a Delaware limited liability company (collectively with Aurora Bank FSB, the "Aurora Sellers"). Each of the Aurora Sellers is a subsidiary of Lehman Brothers Bancorp Inc. We completed the asset acquisition in June 2012. Pursuant to the Aurora Purchase Agreement, we purchased the mortgage servicing rights ("MSRs") to approximately 300,000 residential mortgage loans with a total unpaid principal balance ("UPB") of approximately $63.7 billion, as measured as of May 31, 2012, $1.7 billion of servicing advance receivables, as measured as of May 31, 2012, and certain other assets. The composition of the total portfolio is approximately 75% non-conforming loans in private label securitizations and approximately 25% conforming loans in government-sponsored enterprises ("GSE") pools. We also assumed certain liabilities.

54. NATIONSTAR purchased "servicing rights" – not "ownership" rights.

55. Without actual "ownership" rights, NATIONSTAR did not have the authority to substitute the Trustee, nor cause that substituted trustee, (QUALITY), to issue the NOTS.

## V. GENERAL ALLEGATIONS

56. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the named Defendants sued herein, was the agent and employee of each of the remaining defendants. Plaintiff alleges that each and every defendant ratified the conduct of

each and every other Defendant, and that at all times said defendants were acting within the purpose and scope of such agency and employment.

57. March 22, 2015, Plaintiff made a demand for presentment of her NOTE under Uniform Commercial Code 3-501, and as of the filing of this complaint, neither QUALITY nor NATIONSTAR has responded.

58. Plaintiff further alleges on information and belief that none of these alleged beneficiaries or representatives on the ADOT can prove that they had the authority to sell or buy any interest in the NOTE and DEED, sign the documents, acknowledge the documents or record the documents prior to doing so, in violation of **Nevada Revised Statutes, Chapter 106, et seq. and 107 et seq.**

59. Plaintiff alleges that Defendants, and each of them, are engaged in and continue to engage in violations of Nevada State law including but not limited to **NRS 106.210, 220; 107.025, 107.028, 107.040 - 107.311; NRS 107.520- 560,** and unless restrained will continue to engage in such misconduct, and that public benefit necessitates that Defendants be restrained from such conduct in the future.

60. Defendant NATIONSTAR, in claiming all right, title and interest in the NOTE and DOT, and to enforce the NOTE and DOT, is subject to the Federal Trade Commission "Holder Rule," thus, liable for infirmities, illegalities and other errors or omissions in the loan which spawned the NOTE and DOT.

61. Defendants NATIONSTAR and QUALITY are believed to have completed the non-judicial foreclosure of Plaintiff's home on April 24, 2015 – but there has been no recordation of the Trustee's Deed, simply the posting of a 3 day notice to quit by unnamed parties.

## VI. <u>CAUSES OF ACTION</u>

**FIRST CAUSE OF ACTION**
**FRAUD IN THE FACTUM**
**(Against Defendants ALLIANCE, WCMG, VELLANOWETH, NATIONSTAR and DOES 2-5)**

62. Plaintiff re-alleges and incorporates paragraphs 1-61 above by this specific reference, as though fully set forth herein.

63. Defendants negligently and intentionally misrepresented and/or caused the negligent and/or intentional misrepresentation, (through the illegal means described in Exhibit 3 to Plaintiff's contemporaneously filed Ex Parte Application for Temporary Restraining Order), the value of the Subject Property by failing to use and analyze appropriate comparable sales in Defendant's appraisal and completely disregarding the County appraised tax value of the Subject Property.

64. Defendant WCMG, through Defendant VELLANOWETH negligently and/or intentionally made representations in the appraisal of the property for which Defendants had no reasonable grounds for believing to be fact, and that Defendants knew that someone in the Plaintiff's position would rely on said appraisals in lending practices which would ultimately lead to Plaintiff's damage

65. Plaintiff was led to believe this and more, through actions, verbal assurances, and written statements, specifically, that she were receiving a "conventional" loan.

66. With full understanding, ALLIANCE misrepresented itself as a traditional "lender," when, in reality, ALLIANCE was simply an "originating broker" in the Lehman XS 2006-3 XS Trust, without any corresponding loss to itself if Plaintiff ultimately failed to repay the loan – not the "conventional" loan Plaintiff was misrepresented into believing.

67. With full knowledge it was just an originating broker, ALLIANCE, with direct assistance from WCMG, ALLIANCE tricked Plaintiff into believing she had a "Conventional Loan" where the "Lender" provided the funds directly, rather than obtaining the funds from the

Secondary Market, inherently costing the Plaintiff more money.

68.     ALLIANCE did this with the intent that it and others involved would actually make more money off of the Plaintiff than they would have if sales through multiple parties on the secondary market were not required.

69.     Plaintiff justifiably relied upon ALLIANCE, WCMG and VELLANOWETH in their actions and representations in the loan process because Plaintiff was, at the time, wholly unfamiliar with Loans and Lending, the laws pertaining to such, and ALLIANCE, WCMG and VELLANOWETH appeared to be official companies and individuals, professionals in their field, and this was prior to the mortgage meltdown, when people still had trust and faith in the system and the entities representing it.

70.     Plaintiff justifiably relied upon such imbued misapprehension of the fundamental nature of the transaction and the inherent additional costs when multiple parties are ***contractually mandated*** to be paid through the selling, servicing or future attempted foreclosing upon the loan, to her severe damage and detriment.

71.     In justifiably relying upon the misrepresentations of Defendants, Plaintiff suffered damages in the form of a higher-cost loan that she believed was "conventional," the issues with the adjustable rate increasing, the costs of experts working to unravel what happened, the cost of the previous and this court case, copies, mailings, loss of work, loss of life opportunity in spending time on this rather than regular life, loss of mental, emotional and physical health and well-being due to the extreme stress and distress caused by this entire situation.

72.     In doing the acts alleged herein, Defendants operated with oppression, fraud, and or malice, thus, entitling Plaintiff to punitive damages in an amount of $1,000,000, or 9 to 10 times the compensatory damages awarded, or an amount proven at trial.

**SECOND CAUSE OF ACTION**
TILA VIOLAITONS
(Against Defendants ALLIANCE, DOEs 2-5 and NATIONSTAR)

73.     Plaintiff incorporates by reference the allegations made in paragraphs 1 through 72, inclusive, as though fully set forth herein.

74.     A professional audit, by Prime Legal Services LLC of Clifton, New Jersey, of the Plaintiff's mortgage loan revealed the annual percentage rate [APR] was understated by .460% which is a violation of TILA.

75.     It was further found that the finance charge was understated by an enormous $10,257.00, another violation of TILA.

76.     The inaccurate calculation of the finance charge resulted in an inaccurate amount financed and APR in violation of 15 U.S.C. § 1602(u) and 12 C.F.R. § 226.18.

77.     Furthermore, the variable interest rate was not disclosed to Plaintiff, nor was she provided individual copies of all documents in the transaction as required by TILA in violation of 15 U.S.C. § 1632 and 12 C.F.R. § 226.17(d).

78.     Plaintiff is entitled to damages, injunctive and declaratory relief against Defendants in the form of monetary penalties, enjoining any further actions of Defendants regarding the Subject Property, the title thereto, or Plaintiff's rights, title and interest therein, and also in the form of actual rescission of the loan.

**THIRD CAUSE OF ACTION**
RESCISSION
(Against All Defendants except Vellanoweth)

79.     Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 78, inclusive, as though fully set forth herein.

80.     In Nevada, the right of rescission has been extended to land sale contracts and their accompanying mortgages if fraud or deceptive practices are involved.

81. Nevada also recognizes the unilateral mistake rule found in the Restatement (Second) of Contracts, which allows for rescission when "a mistake ... at the time of contract was made as to a basic assumption ... which ... has a material effect on the agreed exchange of performances that is adverse to him [who made the mistake]... and (b) the other party had reason to know of the mistake or his fault caused the mistake.

82. By withholding all the proper disclosures from the Plaintiff, Defendants ALLIANCE and WCMG were responsible for Plaintiff's misrepresentations of the true nature of the purported "loan" transaction, something the Defendant knew or should have known.

83. As a result, the Plaintiff is entitled to, and hereby does rescind her loan, under TILA, Nevada statutes, Nevada common law, and basic contract law precepts of offer, consideration, acceptance, understanding, and the necessarily fatally flawed requirement of "meeting of the minds."

84. Plaintiff did not know of the facts forming the basis of her ability to rescind the loan until the prime legal services audit was complete and delivered, no earlier than January 12, 2012.

85. Plaintiff would have immediately rescinded the loan if she knew the total misrepresentations made by the named Defendants.

**FOURTH CAUSE OF ACTION**

UNFAIR LENDING PRACTICES UNDER N.R.S. CHAPGER 598D
(Against all Defendants)

86. Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 85, inclusive, as though fully set forth herein.

87. Defendant ALLIANCE made "a home loan to Plaintiff based solely upon the equity of the Plaintiff in the Subject Property and without determining that the Plaintiff had the

ability to repay the home loan from other assets . . ."

88. Defendants ALLIANCE, together with DOEs 2-5, engaged Plaintiff in a falsely represented "conventional" loan without determining she had the ability to repay the loan.

89. Plaintiff was unaware of the facts forming the unfair lending practice until she received Prime Legal Services Audit in 2012.

90. Plaintiff sued thereafter, with such only recently being dismissed "without prejudice" in March of this year, allowing the instant compliant just over a month later, in April of 2015.

91. As a direct and proximate result of the aforementioned wrongful conduct of the Defendants, the Plaintiff have incurred and continue to incur legal fees, including costs, as well as expenses to right the Defendants wrongdoing, suffered anxiety, worry, mental, physical and emotional distress, and other incidental and consequential damages and expenses in an amount which will be proven at the time of trial.

**FIFTH CAUSE OF ACTION**
VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT UNDER N.R.S. CHAPTER 649
(Against Defendants NATIONSTAR, QUALITY, MERS and DOEs 1-7)

92. Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 91, inclusive, as though fully set forth herein.

93. QUALITY and NATIONSTAR violated the FDCPA by failing to include certain language in the NOD mandated by 15 U.S.C. §§ 1692e(11) and 1692g(a)(1)-(5), by making a false and misleading attempt to collect a debt by failing to include the notice required under the DOT, and by misrepresenting that acceleration had occurred when it cannot yet have occurred under the terms of the DOT.

94. QUALITY and NATIONSTAR were not the original Trustee, nor the Original Lender/Servicer.

95. NATIONSTAR is alleged to be a servicer who acquired said position after any alleged default, not prior to, and QUALITY was substituted in by NATIONSTAR.

96. So QUALITY and NATIONSTAR constitute "debt collectors" for purposes of this cause.

97. As a direct and proximate result of the aforementioned wrongful conduct of the Defendants, the Plaintiff have incurred and continue to incur legal fees, including costs, as well as expenses to right the Defendants wrongdoing, suffered anxiety, worry, mental, physical and emotional distress, and other incidental and consequential damages and expenses in an amount which will be proven at the time of trial.

**SIXTH CAUSE OF ACTION**
IMPROPER FORECLOSURE UNDER THE DEED OF TRUST
(Against Defendants NATIONSTAR, QUALITY, MERS and DOEs 1-7)

98. Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 97, inclusive, as though fully set forth herein.

99. Paragraph 22 of the DOT requires (in all bold print) that prior to acceleration of the loan following default, the lender must notify the borrower of default, action required to cure, a date at least thirty days thereafter by which to cure, and that failure to timely cure may result in acceleration.

100. This notice required by the very terms of the DOT was not provided in the NOD, or through any other means or in any other fashion.

101. Rather, in addition to the fact of and amount of default, the NOD instructs Plaintiff: "NOTICE. You may have the right to cure the default . . . . To determine if reinstatement is possible and the amount, if any, to cure the default, contact: [NATIONSTAR Mortgage LLC c/o Quality Loan Service Corporation]".

102. This is not sufficient to satisfy the requirement in paragraph 22 of the DOT that

such information be directly provided to the borrower.

103. Under the plain language of the DOT, the lender bears the burden of providing certain notices concerning default and cure to the borrower.

104. Plaintiff has sued to reverse the foreclosure after the sale but prior to the recordation of the Trustee's Deed, and further seeks a declaration that the Trustee's Sale and the NOD are invalid because he NOD fails to comply with the terms of the DOT.

105. As a direct and proximate result of the aforementioned wrongful conduct of the Defendants, the Plaintiff have incurred and continue to incur legal fees, including costs, as well as expenses to right the Defendants wrongdoing, suffered anxiety, worry, mental, physical and emotional distress, and other incidental and consequential damages and expenses in an amount which will be proven at the time of trial.

**SEVENTH CAUSE OF ACTION**
VIOLATION OF N.R.C.P. 17(A)
(Against Defendants NATIONSTAR, QUALITY, MERS and DOEs 1-7)

106. Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 105, inclusive, as though fully set forth herein.

107. NRCP 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest."

108. A real party in interest is one who possesses the right to enforce the claim and has a significant interest in the litigation.

109. Due to this limitation, a party generally has standing to assert only its own rights and cannot raise the claims of a third party not before the court.

110. NATIONSTAR contends it is the beneficiary of the DOT and the obligee under the NOTE based upon the April 27, 2012, assignment of the NOTE and DOT. For this assignment, (from AURORA to NATIONSTAR), to be valid, the September 8, 2011,

assignment of the Note and DOT to AURORA by MERS must be valid.

111. The authority of an agent terminates when the principal dies [or ceases to exist]. See NRS 162A.270(1)(a). The Restatement (Third) of Agency states:

> (4) When a principal that is not an individual ceases to exist or commences a process that will lead to cessation of its existence or when its powers are suspended, the agent's actual authority terminates except as provided by law.

Restatement (Third) Of Agency § 3.07 (2006)

112. It is undisputed that ALLIANCE voluntarily liquidated and closed as of February 6, 2009. Any powers ALLIANCE granted to MERS to act as the beneficiary of the DOT terminated on that date. Meaning the September 8, 2011, assignment of the DOT and NOTE is void.

113. An act of agency done by an agent after the death of his principal is void even though the agent does not know of his principal's death. *Galt v. Galloway*, 29 U.S. 332, 335, 7 L. Ed. 876 (1830).

114. Therefore, AURORA was not assigned any interest in the NOTE and DOT by MERS.

115. Because AURORA had no interest in either the NOTE or DOT, it could not assign any interest to NATIONSTAR.

116. Meaning NATIONSTAR is not the real party in interest and has no standing to foreclose or to substitute QUALITY in as the Trustee.

117. An injunction must immediately be issued enjoining NATIONSTAR, QUALITY, and any of their agents or assigns from further affecting title to, or the physical condition or possession of the Subject Property, due to the completed Non-Judicial Foreclosure on April 24, 2015.

118. As a direct and proximate result of the aforementioned wrongful conduct of the

Defendants, the Plaintiff has incurred and continues to incur legal fees, including costs, as well as expenses to right the Defendants wrongdoings.

119. Plaintiff has suffered anxiety, worry, mental, physical and emotional distress, and other incidental and consequential damages and expenses in an amount which will be proven at the time of trial.

**EIGHTH CAUSE OF ACTION**
UNLAWFUL BUSINESS PRACTICES AND ACTS
N.R.S. 598A.060
(Against All Defendants)

120. Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 119, inclusive, as though fully set forth herein

121. Plaintiff was deceived by Defendants, which is actionable under N.R.S. 598.023(3), because N.R.S. section 41.600.2(e) provides for a private cause of action for a person who is a victim of consumer fraud.

122. Rules relating to deceptive trade practices are dealt under N.R.S., Title 52, Chapter 598 *et seq.* (Deceptive Trade Practices).

123. Section 598.0915 of this Chapter prohibits any person from advertising goods or services with the intent not to sell or lease them as advertised. Under Title 15, Chapter 207 (Miscellaneous Crimes Deceptive Advertising), Section 207.171, it is unlawful for any person to advertise a device by any means so as to induce any person to buy, sell, lease, dispose of, utilize to create any interest in that thing.

124. N.R.S. 41.600.2(e) defines "consumer fraud" to include a "deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive. Plaintiff's claims are actionable under N.R.S. 598.023(3) for the violations outlined herein.

125. As set forth under Section 41.600 of N.R.S., an action can be brought by any

victim of consumer fraud and can recover damages s/he has sustained, including reasonable attorney fees.

126. As a result of the Defendants numerous, gross, malicious and intentional unlawful business acts and practices described in this Complaint, the Defendants conduct must be considered sufficient to be described as violating N.R.S. 528, et seq.

127. As a direct and proximate result of the aforementioned wrongful conduct of the Defendants, the Plaintiff have incurred and continue to incur legal fees, including costs, as well as expenses to right the Defendants wrongdoing, suffered anxiety, worry, mental, physical and emotional distress, and other incidental and consequential damages and expenses in an amount which will be proven at the time of trial.

**NINTH CAUSE OF ACTION**
**QUIET TITLE**
**(Against All Defendants)**

128. Plaintiff re-alleges and incorporates by this specific reference, all preceding paragraphs as though fully set forth herein.

129. Plaintiff has contemporaneously filed a Notice of Pendency of Action, (Lis Pendens) contemporaneously with this complaint, to comply with the dictates of N.R.S. 14.010.

130. The Nevada Revised Statutes provide for relief in Section 40, which states in **N.R.S. 40.010: Actions may be brought against adverse claimants.** An action may be brought by any person against another who claims an estate or interest in real property, adverse to him, for the purpose of determining such adverse claim.

131. Plaintiff is and has been, at all relevant times to this complaint, the owner of record of the Subject Property, described above commonly, and with its legal description.

132. Defendants, and each of them named by name or by DOE, claim right, title and

interest which is adverse to that of the Plaintiff, and such claims are without foundations or merit.

133. Plaintiff alleges that an assignment made **FROM** MERS as nominee for ALLIANCE after ALLIANCE ceased to exist, is a void act.

134. Further, an assignment made **FROM** MERS as nominee for ALLIANCE, rather than from MERS as nominee for ALLIANCE, to the Sponsor, then from the Sponsor, to the Depositor, then from the Depositor, to the Trustee; is a fatal deviation from the PSA mandates.

135. Plaintiff alleges that the non-performing NOTE has been paid by insurance, being Primary Mortgage Insurance, the insurance imposed once the NOTE was converted to a security, and the Credit Default Swap provisions in the PSA, (which is the industry standard operating procedure), and if so, the debt is discharged and Defendants are fraudulently "double dipping."

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them, as follows:

**FIRST CAUSE OF ACTION**

a) For actual damages against each defendant individually, jointly and severally in an amount to be proven at trial $405,150.00;

b) For general damages against each defendant individually, jointly and severally in an amount to be proven at trial;

c) For special damages against each defendant individually, jointly and severally in an amount to be proven at trial;

d) For exemplary damages against each defendant individually, jointly and severally, in an amount to be proven at trial;

e) For Compensatory damages against each defendant individually, jointly and severally, in an amount to be proven at trial, but not less than 96,498.20;

f) For punitive damages against each defendant individually, jointly and severally, in an amount of $1,000,000, or an amount to be proven at trial;

g) For treble damages at triple the value of the Subject Property, with such amount to be determined at trial but not less than $1,259,873.50;

h) For costs of suit;

i) For other such relief as the court may deem just and proper.

**SECOND CAUSE OF ACTION**

a) For General damages against each defendant individually, jointly and severally in an amount to be proven at trial;

b) For Rescission of the NOTE;

c) For Cancellation and/or a Judicial Declaration the DEED OF TRUST is void;

d) For costs of suit;

e) For other such relief as the court may deem just and proper.

**THIRD CAUSE OF ACTION**

a) For Rescission of the NOTE;

b) For Cancellation and/or a Judicial Declaration the DEED OF TRUST is void;

c) For costs of suit;

d) For other such relief as the court may deem just and proper.

**FOURTH CAUSE OF ACTION**

a) For General damages against each defendant individually, jointly and severally in an amount to be proven at trial;

b) For Actual damages against each defendant individually, jointly and severally in an amount to be proven at trial;

c) For Statutory Damages;

d) For costs of suit herein incurred;

e) For such other and further relief as the court may deem proper.

**FOURTH CAUSE OF ACTION**

a) For General damages against each defendant individually, jointly and severally in an amount to be proven at trial;

b) For Actual damages against each defendant individually, jointly and severally in an amount to be proven at trial;

c) For Statutory Damages;

d) For Injunctive relief, as requested;

e) For costs of suit herein incurred;

f) For such other and further relief as the court may deem proper.

**FIFTH CAUSE OF ACTION**

a) For General damages against each defendant individually, jointly and severally in an amount to be proven at trial;

b) For Actual damages against each defendant individually, jointly and severally in an amount to be proven at trial;

c) For Statutory Damages;

d) For Injunctive relief, as requested;

c) For costs of suit herein incurred;

f) For such other and further relief as the court may deem proper.

**SIXTH CAUSE OF ACTION**

a) For General damages against each defendant individually, jointly and severally in an amount to be proven at trial;

b) For Actual damages against each defendant individually, jointly and severally in an amount to be proven at trial;

c) For Statutory Damages;

d) For Injunctive relief, as requested;

e) For costs of suit herein incurred;

f) For such other and further relief as the court may deem proper.

**SEVENTH CAUSE OF ACTION**

a) For General damages against each defendant individually, jointly and severally in an amount to be proven at trial;

b) For Actual damages against each defendant individually, jointly and severally in an amount to be proven at trial;

c) For Statutory Damages;

d) For Injunctive relief, as requested;

e) For costs of suit herein incurred;

f) For such other and further relief as the court may deem proper.

**EIGHTH CAUSE OF ACTION**

a) For General damages against each defendant individually, jointly and severally in an amount to be proven at trial;

b) For Actual damages against each defendant individually, jointly and severally in an amount to be proven at trial;

c) For Statutory Damages;

d) For Injunctive relief as requested;

e) For costs of suit herein incurred;

f) For such other and further relief as the court may deem proper.

**NINTH CAUSE OF ACTION**

a) A Determination and Declaratory judgment that Plaintiff is the rightful owner of record in actual possession of the Subject Property;

b) For an Order that defendants, WEST COAST MORTGAGE GROUP; ALLIANCE BANCORP; AURORA BANK, FSB; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., **ROSE VELLANOWETh, DOES 1-10, inclusive**, their assigns, agents, or representatives have no estate, right, title or interest in 1020 Zurich Avenue, Henderson, NV 89015, located in Clark County, A.P.N. 179-16-812-008;

c) A Judgment forever enjoining said defendants, WEST COAST MORTGAGE GROUP; ALLIANCE BANCORP; AURORA BANK, FSB; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., **ROSE VELLANOWETh, DOES 1-10, inclusive,** their assigns, agents, or representatives from claiming estate, right, title or interest in 1020 Zurich Avenue, Henderson, NV 89015, located in Clark County, A.P.N. 179-16-812-008;

d) For costs of suit;

e) For other such relief as the court may deem just and proper.

Dated this 11 day of May, 2015.

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

**VERIFICATION**

I, I Priscilla Santos Cortez do hereby verify under the penalty of perjury that the contents of the heretofore attached Complaint are true, correct and complete to the best of my firsthand knowledge, understanding, information and belief.

DATE: May 11th 2015

Priscilla Santos Cortez

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

(48)

FILED
MAY 11 2 43 PM '15
CLERK OF THE COURT

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

Propria persona

A-15-718200-C
XIII

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| PRISCILLA SANTOS CORTEZ<br><br>Plaintiff,<br>vs.<br><br>NATIONSTAR MORTGAGE, LLC;<br>QUALITY LOAN SERVICING, LLC;<br>WEST COAST MORTGAGE GROUP;<br>ALLIANCE BANCORP;<br>AURORA BANK, FSB;<br>MORTGAGE ELECTRONIC :<br>REGISTRATION SYSTEMS, INC.<br>ROSE VELLANOWETH<br>and DOES 1-10, inclusive<br>Defendants | **DECLARATION OF PRICILLA SANTOS CORTEZ IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>A-15-718200-C<br>DECL<br>Declaration<br>4465724 |

## DECLARATION OF PRISCILLA SANTOS CORTEZ

I, Priscilla Santos Cortez, do hereby declare:

1. I am over the age of 18, of sound mind, and am competent and willing to testify to all the facts in this Declaration.

2. I am the Plaintiff in the above entitled cause.

3. I am the owner of the real property at issue in this case.

4. I have reviewed the documentation filed in the Clark County Recorder's Office, my Deed of Trust, Promissory Note and the Audit performed by Prime Legal Services.

RECEIVED
MAY 11 2015
CLERK OF THE COURT

3

5.      NATIONSTAR does not have the requisite standing to act as beneficiary.  It only received "servicing rights" from Aurora, not beneficial interest in the NOTE and Deed.

6.      QUALITY, as substituted by NATIONSTAR, cannot be and is not the legal, lawful and validly appointed Trustee.

7.      Thus, NATIONSTAR and QUALITY have no right to be threatening the foreclosure of my home.

8.      The loan I was sold had fatal defects in the form of fraudulent misrepresentations about the source, basis and nature of the loan.

9.      I believed I was getting a conventional loan, not funding the front end of a securitization deal with a half-hazard bank who is now bankruptcy because it orchestrated so many fraudulent loans like mine.

10.     I made a demand for presentment of my NOTE under Uniform Commercial Code 3-501 back on March 22, 2015.

11.     I have not received any response, and instead, QUALITY and NATIONSTAR have threated to sell my home.

12.     QUALITY, NATIONSTAR, MERS AND WEST COAST MORTGAGE GROUP have been notified of the Ex Parte TRO hearing.

13.     ALLIANCE and AURORA no longer exist, and Ms. Vellanoweth is unlocatable, even after diligent searching.

14.     I am facing the irreparable loss of my home, something irreplaceable with money, while Defendants are facing, at most, a delay in their money, secured by real property.

15.     They did not respond to my written requests regarding the loan, they did not respond to my written requests under and pursuant to UCC 3-501, they have ignored numerous

Nevada Revised Statutes, and April 24, 2015, Defendants QUALITY and NATIONSTAR are believed to have completed the foreclosure of my home – no one has recorded a Trustee's Deed yet.

16. I have attempted personal consultation with Defendants with sincere effort to do so, in writing, by mail, several times. I have called QUALITY and NATIONSTAR, but the employees at QUALITY simply want me to make a payment, and I never reach a live person at the NATIONSTAR line. I am passed around from one automated prompt to the next, until I reach a dead end, never being connected with a live person.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true, correct and complete to the best of my firsthand knowledge and belief. Executed this 11th day of May, at LAS VEGAS, Nevada.

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

(48)

FILED

MAY 11 2 43 PM '15

CLERK OF THE COURT

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

Propria persona

A-15-718200-C
XIII

DISTRICT COURT

CLARK COUNTY, NEVADA

PRISCILLA SANTOS CORTEZ

Plaintiff,

vs.

NATIONSTAR MORTGAGE, LLC; QUALITY LOAN SERVICING, LLC; WEST COAST MORTGAGE GROUP; ALLIANCE BANCORP; AURORA BANK, FSB; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; ROSE VELLANOWETH; and DOES 1-10, inclusive,

Defendants.

**DECLARATION OF PRISCILLA S. CORTEZ IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**

A-15-718200-C
DECL
Declaration
4455723

**DECLARATION OF PRISCILLA S. CORTEZ, RE: NOTICE**

I, PRISCILLA S. CORTEZ, do hereby declare:

1. I am over the age of 18, of sound mind, and am competent and willing to testify to all the facts in this Declaration.

2. Today, May 11, 2015, I faxed a copy of the Plaintiff's Comp. and related documents to the following:

a. QUALITY LOAN SERVICE at Fax No. (619) 757-2355;

RECEIVED
MAY 11 2015
CLERK OF THE COURT

4

b. NATIONSTAR MORTGAGTE, LLC at Fax No. (972)-315-6827.

3. I also called NATIONSTAR's registered agent in Nevada, CSC Services of Nevada, located at: 2215 Renaissance Drive., Las Vegas, NV 89119, at telephone number: (888) 921-8397.

4. I informed them Plaintiff would be bringing an ex parte application for temporary restraining order against the Defendants herein and whomever posted the 3 day Notice at the following time and location:

**May 11 , 2015, at ____ a.m.,**

at the location of:

**The Clark County Superior Court, 200 Lewis Avenue, Las Vegas, NV 89101.**

5. I also called QUALITY's registered agent in Nevada, Kristin A. Schuler-Hintz, located at: 9510 W. Sahara Avenue, Las Vegas, NV 89117, at telephone number: (888) 921-8397.

6. I informed them Plaintiff would be bringing an ex parte application for temporary restraining order against the Defendants herein and whomever posted the 3 day Notice at the following time and location:

**May 11 , 2015, at ____ a.m.,**

at the location of:

**The Clark County Superior Court, 200 Lewis Avenue, Las Vegas, NV 89101.**

7. WEST COAST MORTGAGE GROUP's at their listed phone number: (916) 453-7533, as they are "Unregistered" in the State of Nevada, and located at: 2716 Broadway, Sacramento, CA 95818.

8. I informed them Plaintiff would be bringing an ex parte application for temporary restraining order against the Defendants herein and whomever posted the 3 day Notice at the following time and location:

**May // , 2015, at ____ a.m.,**

at the location of:

**The Clark County Superior Court, 200 Lewis Avenue, Las Vegas, NV 89101.**

9. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at 1-888-679-MERS (679-6377), provided them the MIN number off the Deed of Trust, and the property address.

10. I informed them Plaintiff would be bringing an ex parte application for temporary restraining order against the Defendants herein and whomever posted the 3 day Notice at the following time and location:

**May // , 2015, at ____ a.m.,**

at the location of:

**The Clark County Superior Court, 200 Lewis Avenue, Las Vegas, NV 89101.**

11. I contacted "Rebecca P. Kern, Esq.," who signed the 3 day notice to quit, at telephone number (858) 750-7600, (the phone number provided on the 3 day notice to quit).

12. I informed Ms. Kern that Plaintiff would be bringing an ex parte application for temporary restraining order against the Defendants herein and whomever posted the 3 day Notice, at the following time and location:

**May // , 2015, at ____ a.m.,**

at the location of:

**The Clark County Superior Court, 200 Lewis Avenue, Las Vegas, NV 89101.**

13. I was unable to contact the following entities for the specified reasons:

14. ALLIANCE BANCORP, (Nevada Corporate Status: "Permanently Revoked". At this point, ALLIANCE BANCORP is a "non-existent entity).

15. AURORA BANK, FSB; (never registered in Nevada. At this point, AURORA BANK, FSB is a "non-existent entity).

16. ROSE VELLANOWETH is an individual whom I have diligently searched for online, and cannot locate.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true, correct and complete to the best of my firsthand knowledge and belief. Executed this 11TH day of May, at LAS VEGAS, Nevada.

Priscilla S. Cortez

PRISCILLA S. CORTEZ

(type in name of declarant)
Declarant.

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

Propria persona

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| **PRISCILLA SANTOS CORTEZ,**<br><br>Plaintiff,<br>vs.<br><br>NATIONSTAR MORTGAGE, LLC;<br>QUALITY LOAN SERVICING, LLC;<br>WEST COAST MORTGAGE GROUP;<br>ALLIANCE BANCORP;<br>AURORA BANK, FSB;<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;<br>ROSE VELLANOWETH;<br>and DOES 1-10, inclusive,<br><br>Defendants. | **CIVIL CASE NO.** A-15-718200-C<br><br>Department No. XIII |

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TO SET HEARING FOR PRELIMINARY INJUNCTION**

COMES NOW, Plaintiff, Priscilla Santos Cortez, ("Plaintiff"), appearing In Pro Per, hereby files the instant EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TO SET HEARING FOR A PRELIMINARY INJUNCTION to maintain the status quo of Plaintiff, by enjoining NATIONSTAR MORTGAGE, LLC, ("NATIONSTAR"); QUALITY LOAN SERVICES, LLC, ("QUALITY"); WEST COAST MORTGAGE GROUP, ("WCMG"); ALLIANCE BANCORP; ("ALLIANCE"); AURORA BANK, FSB, ("AURORA"); MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS");

ROSE VELLANOWETH, ("VELLANOWETH"), their agents, employees, attorneys, and anyone acting on their behalf, from foreclosing, pursuing any foreclosure action, taking possession of, or in any other manner interfering with the peaceful enjoyment and possession by Mrs. Cortez of her home located at **1020 Zurich Avenue, Henderson, NV 89015**, located in Clark County, with the legal description of:

> Lot Eight (8) in Block A of BOULDER CREEK 11, as shown by map thereof on file in Book 124 of Plats, Page 72, in the Office of the County Recorder of Clark County, Nevada.

A.P.N. 179-16-812-008, (hereinafter, the "Zurich Home").

This Application is based on N.R.C.P. 65 and N.R.S. § 33.010, the attached memorandum of points and authorities, the attached declaration of Priscilla Cortez, and any such further evidence and/or argument as will be presented at the hearing.

Dated this 11th day of May, 2015.

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TERMPORARY RESTRAINING ORDER

## I. INTRODUCTION

This action and motion are necessary to prevent Defendants from forcing the non-judicial foreclosure sale of Plaintiff's home and causing irreparable harm to Plaintiff.

Defendants NATIONSTAR and QUALITY are actively engaged in a scheme to unlawfully foreclose on Plaintiff's home.

NATIONSTAR claims to have purchased the right to enforce the promissory note from AURORA, who claimed to obtain the same from MERS as nominee for ALLIANCE – but the MERS assignment was executed in September of 2011, and ALLIANCE was closed on February 6, 2009. https://www.fdic.gov/bank/historical/bank/2009/

This means AURORA could not sell all beneficial interest in the Promissory Note to NATIONSTAR - because AURORA never received all beneficial interest in the Promissory Note from MERS – because MERS was acting for a non-existent entity.

The Latin phrase, *nemo dat* meaning: one cannot sell what one does not own.

Secondarily, NATIONSTAR and QUALITY have ignored Plaintiff's requests for modification and mediation, when such requests are legally mandated to be responded to at this point in the foreclosure crisis.

Third, the loan terms and conditions are patently illegal, entitling Plaintiff to rescission of her promissory note.

Finally, numerous Nevada Statutes relating to foreclosure were absolutely ignored by Defendants, requiring the issuance of the requested Temporary Restraining Order, then preliminary, and permanent injunction.

## II. STATEMENT OF FACTS

**A. Recent Events**

Plaintiff previously sued the original lender and a host of other entities. They successfully removed the case to Federal Court, and completely unprepared for such a battle, Plaintiff was unable to articulate a responsive document to NATIONSTAR's motion to dismiss in a timely fashion.

As such, the case was dismissed by the Federal Court, "without prejudice". **Exhibit 1, *Dismissal Without Prejudice.***

Ms. Cortez was subjected to the non-judicial foreclosure of her primary residence just days ago: April 24, 2015. ***Exhibit 2, Notice of Trustee's Sale.*** The Trustee's Deed has not yet been recorded, but a 3 day notice to quit has been posted. **Exhibit 9, 3 day notice to quit.**

**B. The Loan.**

January 5, 2006, Plaintiff, in seeking financing for the Purchase of the Subject Property, completed a Uniform Residential Loan Application with the assistance of a broker, Defendant Vellanoweth, employed by Defendant WCMG.

Plaintiff was led to believe she was applying and receiving a "conventional loan," as that boxed was checked on the Uniform Residential Loan Application.

The Appraisal was conducted at a cost of $475.00 and the Subject Property was appraised higher than the actual value, based upon an artificially created curve based upon Defendants greed as opposed to actual value.

Said appraiser inflated the appraisal of the Subject Property, either unilaterally to ensure the closing, or due to pressuring from ALLIANCE, Vellanoweth, and/or an as yet identified entity sued herein as DOE #1. See **Exhibit 3, *Petition signed by Appraisers.***

As part of the loan package, Plaintiff was provided numerous disclosures and documents, including the Truth in Lending Act Statement, (TILA Form) and a final closing

statement (Closing Statement). **See Exhibit 4, Prime Legal Services Audit.**

The initial TILA form disclosed the terms as 7.260% APR, the amount financed as $405,150.00, the finance charge as $601,277.82, the total of payments as $1,006,427.62, with 24 payments of $2,447.78, 335 payments of $2,820.48, and 1 payment of $2,820.10. **See Exhibit 4, Prime Legal Services Audit.**

The final TILA form disclosed the terms as 7.720% APR, the amount financed as $393,985.38, the finance charge as $691,178.44, the total of payments as $1,085,163.82, with 24 payments of $2,447.78, 96 payments of $2,532.19, 239 payments of $3,263.86, and a final payment of $3,264.32.

The Closing Statement disclosed the following fees and charges:

a. $6,077.25 – Loan Origination Fee – WCMG;

b. $475.00 – Appraisal Fee to WCMG

c. $500.00 – Broker Processing Fee to WCMG

d. $300.00 – Administrative Fee – WCMG

e. $495.00 – Underwriting Fee - ALLIANCE

f. $295.00 – Document Fee – ALLIANCE

g. $89.00 – Tax Service Fee – ALLIANCE

h. $2,025.75 – Yield Spread Premium (1st)- WCMG

i. $125.50 – Yield Spread Premium (2nd) – WCMG

For a total of $9,378.00 to WCMG and a total of $879.00 to ALLIANCE. **See Exhibit 4, Prime Legal Services Audit.**

The Uniform Underwriting Transmittal Summary disclosed a Loan to Value ratio of 80.000%, and the combined, total loan total value ratio of 89.991%. **See Exhibit 4, Prime Legal Services Audit.**

On or about January 5, 2006, Plaintiff signed the Promissory Note, ("NOTE") naming ALLIANCE as the Lender, with absolutely no reference to MERS or any other entity to pay.

The terms stated on the face of the actual NOTE were $405,150.00, for 360 months, at an interest rate of 7.250%; ARM type loan.

Plaintiff issued a notice to NATIONSTAR and QUALITY on April 13, 2015, demanding proof upon presentment being made under and pursuant to UCC 3-501. Neither Quality nor Nationstar, nor the "real" claimed owner has responded.

**C. Official Records of Clark County, Nevada**

The NOTE was secured with a first Deed of Trust, ("DEED"), dated January 5, 2006, recorded January 17, 2006, under Instrument No. 20060117-0003647. Defendant ALLIANCE is the Lender on the DEED, and MERS is the nominee beneficiary for ALLIANCE, "solely with regard to the [DEED]."

Subsequently, a "Corporate Assignment of Deed of Trust" ("CADOT"), was signed on September 8, 2011, by Pamela J. Pedersen, "Vice President" of MERS, as nominee for ALLIANCE, notarized same day by Deb Seibert in Scotts Bluff, Nebraska.

The CADOT claimed to transfer all beneficial interest in the NOTE and DEED from MERS as nominee for ALLIANCE to AURORA.

The CADOT was recorded by AURORA on November 15, 2011, under Instrument No. 201111150002906. **Exhibit 5, CADOT.**

Subsequently, an "Assignment of Deed of Trust" ("ADOT"), was signed on April 27, 2012, by Clint Vail, "Assistant Secretary" of NATIONSTAR, claiming to act as "attorney in fact" for Aurora!, notarized the same day in Danton, Texas.

The ADOT claimed to transfer all beneficial interest in the NOTE and DEED from AURORA to NATIONSTAR.

The ADOT was recorded in the Clark County Recorder's Office on December 4, 2012, as Instrument No. 201212040002280. **Exhibit 6, ADOT.**

Subsequently, a Substitution of Trustee, ("SOT"), was signed on December 18, 2012, by Stephanie Fuentes, "Assistant Secretary" for QUALITY, acting as "attorney in fact" for NATIONSTAR.

The SOT claims to substitute QUALITY for the original Trustee under the DOT.

The SOT was recorded in the Clark County Recorder's Office on December 20, 2012, as Instrument No. 20121220004110. **Exhibit 7, SOT.**

Subsequently, a Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust, ("NOD") was signed by Stephanie Fuentes, "Assistant Secretary" of QUALITY.

The NOD claims Plaintiff defaulted on the original amount of $405,150.00, with installments of principle and interest becoming due on May 1, 2011.

The NOD did not provide all required notices and language consistent with the DOT.

December 17, 2014, the NOD was recorded in the Clark County Recorder's Office as Instrument No. 20141217-0000019. **Exhibit 8.**

Subsequently, around April 10, 2015, QUALITY sent a Notice of Trustee's Sale to Plaintiff at the Zurich Home.

The Notice threated a sale on April 24, 2015. **Exhibit 2.**

**D. The Securitization**

Though ALLIANCE was listed as the "Lender" on the NOTE and MORTGAGE, Plaintiff is informed and believes and thereon alleges ALLIANCE was in fact, an "originating broker" in the LEHMAN XS TRUST SERIES 2006-3 securitization transaction. **Exhibit 4 Prime Legal Services, LLC, "Property Securitization Analysis Report".**

As an originating broker, ALLIANCE entered into a myriad of contracts, whereby the actual funds ALLIANCE allegedly wired as part of her obligation in this mortgage loan transaction were provided by a different entity, and ALLIANCE pre-sold its interests in the NOTE and DOT.

With the designation "Lender," rather than "originating broker," and a "Conventional Loan," ALLIANCE was able to ensnare Plaintiff in a loan whose terms are literally unconscionable.

Between January 5, 2006 and February 28, 2006, and ALLIANCE sold all its interest in NOTE, without recourse to Lehman Brothers Holding Inc., (as "Seller"), who in turn sold the same to Structured Asset Securities Corporation, (as "Depositor"), and thereafter, between and February 1, 2006 (the "cut-off date") and February 28, 2006 (the "closing date"), it was placed into LEHMAN XS 2006-3, as an asset for issuance of certificates against same.

The Pooling and Servicing Agreement, ("PSA") for the Lehman XS 2006-3 securitized trust[1] empowered U.S. Bank, N.A. as the "Trustee" and AURORA as "Servicer," explicitly limited the actions U.S. Bank, N.A. as Trustee and AURORA as Servicer could take with regard to assets of the Trust, and contained numerous relevant clauses and mandatory provisions.

On September 8, 2011 AURORA purportedly purchased all beneficial interest in the NOTE and DEED from MERS as nominee for ALLIANCE, (who already sold such in 2006), who in turn was claiming to sell such unilaterally, as opposed to "as nominee" for Defendant ALLIANCE.

The ADOT was executed over four (4) years after the cut-off date of the LEHMAN XS

[1] Available from the SEC at http://www.secinfo.com/d12TC3.v9qv.d.htm.

2006-3 Trust, and recorded almost two years ***past*** the two year limit explicitly delineated in the PSA.

According to mandated Securities and Exchange Commission disclosures by NATIONSTAR, (available for download at: **http://www.sec.gov/Archives/edgar/data/1507951/000119312512306813/d381728dex994.htm**):

> On March 6, 2012, we entered into an asset purchase agreement (as subsequently amended, the "Aurora Purchase Agreement") with Aurora Bank FSB, a federal savings bank organized under the laws of the United States, and Aurora Loan Services LLC, a Delaware limited liability company (collectively with Aurora Bank FSB, the "Aurora Sellers"). Each of the Aurora Sellers is a subsidiary of Lehman Brothers Bancorp Inc. We completed the asset acquisition in June 2012. Pursuant to the Aurora Purchase Agreement, we purchased the mortgage servicing rights ("MSRs") to approximately 300,000 residential mortgage loans with a total unpaid principal balance ("UPB") of approximately $63.7 billion, as measured as of May 31, 2012, $1.7 billion of servicing advance receivables, as measured as of May 31, 2012, and certain other assets. The composition of the total portfolio is approximately 75% non-conforming loans in private label securitizations and approximately 25% conforming loans in government-sponsored enterprises ("GSE") pools. We also assumed certain liabilities.

NATIONSTAR purchased "servicing rights" – not "ownership" rights.

Finally, March 22, 2015, Plaintiff made a demand for presentment of her NOTE under Uniform Commercial Code 3-501. (Comp. ¶ 56.) To date, neither QUALITY nor NATIONSTAR has responded.

## III. LEGAL STANDARDS REQUIRED FOR INJUNCTIVE RELIEF

A temporary restraining order and/or preliminary injunction is required in this matter in order to protect the irreplaceable real property of Plaintiff which Defendant are attempting to cause a sale of the record title to.

As stated above, in order to be awarded continuing preliminary injunctive relief herein, the Plaintiff must show "a likelihood of success on the merits and a reasonable probability that the non-moving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory damage is an inadequate remedy. *Pickett v. Comanche Construction, Inc.*, 108 Nev. 422, 426, 836 P.2d 42, 44 (1992)." *Dangberg Holdings Nevada, LLC, v. Douglas County*, 115 Nev. 129, 141, 978 P.2d 311, 318 (1999).

NCRP 65(b) permits this Court to issue a temporary restraining order without notice if the Plaintiff can clearly show that it will suffer immediate and irreparable injury, loss or damage before the adverse party has an opportunity to be heard in opposition. In order to prevail on an application for a temporary restraining order and preliminary injunction, the moving party must demonstrate probable success on the merits and the possibility of irreparable harm. *See S.* O. C., *Inc. v. The Mirage Casino-Hotel,* 23 P.3d 243, 246 (Nev. 2001) (establishing standards for preliminary injunctive relief); *Dangberg Holdings v. Douglas* Co., 978 P.2d 311, 322 (1999) (injunctive relief is appropriate when a serious question of law or fact is involved, and the balance of equities tips decidedly in the movant's favor); *see also* N.R.S. 33.010. Pursuant to N.R.S. 33.010, an injunction may be granted in the following cases:

> 1. When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually
>
> 2. When it shall appear by the complaint or affidavit that the commission or continuance of some act, during the

> litigation, would produce great or irreparable injury to the plaintiff.
>
> 3. When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual.

Nevada law states that the issuance of a preliminary injunction is conditioned principally upon an evaluation of two factors: (1) the moving party's reasonable likelihood of success on the merits; and (2) the likelihood of irreparable harm to the moving party if the injunction is not issued. *Pickett v. Comanche Construction, Inc.*, 108 Nevada 422, 426, 836 P.2d 42,44 (1992); *Number One Rent A Car v. Ramada Inns, Inc.*, 94 Nev. 779,780-781,587 P.2d 1329, 1330 (1978). The Nevada Supreme Court has discussed the elements necessary for preliminary injunction in *Dixon v. Thatcher,* 103 Nev. 415, 742 P.2d 1029 (1987):

> normally available upon a showing that the party seeking it enjoys a reasonable probability of success on the merits and that the defendant's conduct, if allowed to continua, will result in irreparable harm for which compensatory damages is an inadequate remedy. *Number One Rent-A-Car v. Ramada Inns,* 94 Nev. 779, 780, 587 P.2d 1329, 1330 (1978).

A temporary restraining order is a form of preliminary injunctive relief that may issue without notice to the adverse party or that party's attorney. Its sole purpose is to preserve the status quo pending a hearing on the moving party's application for a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439, 94 S.Ct. 113, 1124 (1974). Ata minimum, a plaintiff must satisfy the general equitable requirements by showing a significant threat of "irreparable injury" and that legal remedies are "inadequate." *Arcamuzi v. Continental Air Unes, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987). Moreover, a court's analysis is substantially identical for injunctions and temporary

restraining orders. *Stuhlbarg International Sales* Co., *Inc. v. John D. Brush and* Co., *Inc.*, 240 F.3d 832, 839 (9th Cir. 2001).

**IV. ARGUMENT**

**a. Plaintiff is likely to succeed**

The likelihood of success on the merits by the Plaintiffs in this matter is without question. Both NATIONSTAR and QUALITY have ignored Plaintiff's modification requests, request under UCC 3-501. Instead of acknowledging the illegality of her loan, the severe law violations which have occurred, sever issues with the loan and related documentation, Defendants QUALITY and NATIONSTAR have proceeded through to foreclosure on April 24, 2015, and a 3 day notice to quit has been posted.

The Assignments do not match with the real world facts of ALLIANCE ceasing to exist, AURORA only being a "servicer," and NATIONSTAR only purchasing "servicing rights" from AURORA, per Securities and Exchange Commission documentation.

Flat refusal to acknowledge the fatal errors in the loan NATIONSTAR **claims** to have purchased from a Servicer, AURORA, via Assignment, wherein AURORA claimed to obtain the same from MERS, as nominee for the original lender, ALLIANCE. Bigger problem: the MERS to AURORA assignment was executed after ALLIANCE ceased to exist. Worse, though not required to issue Plaintiff a loan modification, NATIONSTAR was required to acknowledge Plaintiff's modification request, and at least process it. This was not done, despite Plaintiff's repeated requests specifically articulated due to the numerous illegal facts of the ALLIANCE originated loan.

Specific to QUALITY and NATIONSTAR, the Notice of Default violates several provisions of the DOT. (Comp. ¶¶ 42, 91-96.)

NATIONSTAR did not have the authority to substitute the Trustee, nor cause that

substituted trustee, (QUALITY), to issue the NOTS.

NATIONSTAR did not have the authority to sell or buy any interest in the NOTE and DEED, sign the documents, acknowledge the documents or record the documents prior to doing so, in violation of **Nevada Revised Statutes, Chapter 106, et seq. and 107, et seq.**

NATIONSTAR and the related Defendants, are engaged in and continue to engage in violations of Nevada State law including but not limited to **NRS 106.210, 220; 107.025, 107.028, 107.040 - 107.311; NRS 107.550** and unless restrained will continue to engage in such misconduct, and that public benefit necessitates that Defendants be restrained from such conduct in the future.

**b. Plaintiff has made the Requisite Showing if Irreparable Harm**

When a moving party demonstrates a reasonable likelihood of success on the merits, it need show only a possibility of irreparable harm to warrant issuance of a temporary restraining order and preliminary injunction. *See, International Jensen, Inc. v. Metrosound, U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993) (burden met by showing probable success on the merits and the possibility of irreparable harm). The requirement of "irreparable injury" means that the injury is "of a peculiar nature, so that compensation in money cannot atone for it." *A. O. Smith Corp. v. F. T. C.*, 530 F.2d 515, 525 (3d Cir. 1976). To show irreparable harm, a plaintiff must demonstrate potential harm which cannot be redressed by a legal remedy following litigation. *Dangberg Holdings v. Douglas County,* 978 P.2d 311,319 (Nev. 1999).

In the instant matter, there is a risk of likelihood of irreparable harm to the moving party if the injunction is not issued. Real property is unique, irreplaceable, and Plaintiff owns the property at risk which a judicial foreclosure was just completed on, April 24, 2015 – the trustee's deed has not yet been recorded.

**c. Entitlement to Emergency Relief**

Plaintiff faces the irreparable harm of losing her home – a piece of real property which cannot be replaced by money. Defendants, on the other hand, at best have money involved. With a basic balance of equities, the scales tip heavily in Plaintiff's favor.

Further, the foreclosure just occurred April 24, 2015, and no trustee's deed is even recorded yet. This Court can prevent that recording – now.

**d. Notice Given**

Per the attached declaration, notice has been provided to all defendants, and if not, why it was not practicable to do so.

**e. Consultation Impractical**

Per the attached declaration of Priscilla Cortez, consultation with NATIONSTAR, QUALITY and the remaining defendants was not practicable.

## V. NRCP 65(c) SECURITY BOND

NRCP 65(c) states that no restraining order or preliminary injunction may be issued except upon the giving of security by the applicant in an amount which the Court deems appropriate. However, with the illegal actions and activities which have been evidenced, no bond should be required.

NATIONSTAR is not the real party in interest, and cannot be, based upon the documentation. QUALITY is not the lawfully substituted Trustee, and cannot be, based upon the documentation. A host of Nevada State Statutes have been violated by the actions amounting to "foreclosure" of Plaintiff's home on April 24, 2015. A 3 day notice to quit has been posted. Entrance of a TRO to prevent any further actions of Defendants is the only equitable course at this point.

## VI. CONCLUSION

Based upon the foregoing points and authorities and the attached declarations, Plaintiff respectfully requests that this Honorable Court issue an ex parte temporary restraining order, based in part, upon **NRS 107.560**, and subsequent preliminary injunction, in order to halt the illegal sale of Plaintiff's interests in her home by fraudulent third party imposters with no right to her loan, which itself, *is illegal and requires rescission.*

Dated this 11th day of May, 2015.

____________________________

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

# NOTICE OF TRUSTEE SALE DISPUTE

# NOTICE TO ALL POTENTIAL BIDDERS

**PROPERTY ADDRESS: 1020 ZURICH AVENUE
HENDERSON, NV 89015**

# YOU ARE BIDDING NOT THE PROPERTY ITSELF BUT ONLY FOR THE VALID LIEN (IF IT EXISTS).

# NOTICE IS HEREBY GIVEN TO PRINCIPAL AND AGENTS

You and your company maybe involve or engage in committing **Fraud, Harassment, misrepresentation and violations of Fair Debt Collection Practices Act** such as :

1. 15 USC 1692d §806 Harassment or abuse
2. 15 USC 1692e §807 False or misleading representation
3. 15 USC 1692f §808 Unfair Practices
4. 15 USC 1692g §809 Validation of Debts
5. 15 USC 1692j §812 Furnishing certain deceptive forms.

COURT ACTION WILL BE LODGE AND POSSIBLE SANCTION UNDER FEDERAL CRIMINAL CODE WILL BE IMPOSE TO THOSE WHOEVER COMMITTED THE CRIME.

APN No.: 179-16-812-008
Recording requested by:

When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

Space above this line for recorders use only

TS No.: NV-11-474296-CL
Order No.: 984737

It is hereby affirmed that this document submitted for recording does not contain the social security number of any person or persons. (Per NRS 239B.030).

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 1/5/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s): **RICHARD EVALOBO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY AND PRISCILLA SANTOS CORTEZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

Recorded: **1/17/2006 as Instrument No. 20060117-0003647** of Official Records in the office of the Recorder of **CLARK** County, Nevada;

Date of Sale: **4/24/2015 at 10:00 AM**

Place of Sale: **At the Office of the Nevada Legal News Located at 930 South 4th Street Las Vegas, Nevada 89101**

Amount of unpaid balance and other charges: **$477,601.05**

The purported property address is: **1020 ZURICH AVE, HENDERSON, NV 89015**

This property is sold as-is, lender is unable to validate the condition, defects or disclosure issues of said property and buyer waives the disclosure requirements under NRS 113.130 by purchasing at this sale and signing the receipt of sale. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**NOTICE TO TENANTS OF THE PROPERTY**

Foreclosure proceedings against this property have started, and a notice of sale of the property to the highest bidder has been issued. You may either: (1) terminate your lease or rental agreement and move out; or (2) remain and possibly be subject to eviction proceedings under chapter 40 of the Nevada Revised Statutes. Any subtenants may also be subject to eviction proceedings. Between now and the date of the sale, you may be evicted if you fail to pay rent or live up to your other obligations to the landlord. After the date of the sale, you may be evicted if you fail to pay rent or live up to your other obligations to the successful bidder, in accordance with chapter 118A of the Nevada Revised Statutes.

Under the Nevada Revised Statutes eviction proceedings may begin against you after you have been given a notice to quit. If the property is sold and you pay rent by the week or another period of time that is shorter than 1 month, you should generally receive notice after not less than the number of days in that period of time. If the property is sold and you pay rent by the month or any other period of time that is 1 month or longer, you should generally receive notice at least 60 days in advance. Under Nevada Revised Statutes 40.280, notice must generally be served on you pursuant to chapter 40 of the Nevada Revised Statutes and may be served by: (1) Delivering a copy to you personally in the presence of a witness; (2) If you are absent from your place of residence or usual place of business, leaving a copy with a person of suitable age and discretion at either place and mailing a copy to you at your place of residence or business; or (3) If your place of residence or business cannot be ascertained, or a person of suitable age or discretion cannot be found there, posting a copy in a conspicuous place on the leased property, delivering a copy to a person residing there, if a person can be found, and mailing a copy to you at the place where the leased property is.

If the property is sold and a landlord, successful bidder or subsequent purchaser files an eviction action against you in court, you will be served with a summons and complaint and have the opportunity to respond. Eviction actions may result in temporary evictions, permanent evictions, the awarding of damages pursuant to Nevada Revised Statutes 40.360 or some combination of those results. Under the Justice Court Rules of Civil Procedure: (1) You will be given at least 10 days to answer a summons and complaint; (2) If you do not file an answer, an order evicting you by default may be obtained against you; (3) A hearing regarding a temporary eviction may be called as soon as 11 days after you are served with the summons and complaint; and (4) A hearing regarding a permanent eviction may be called as soon as 20 days after you are served with the summons and complaint.



AppraisersPetition.com
Concerned Real Estate Appraisers seeking Fair and Impartial Treatment and Responsible Representation and Enforcement of the Law

AdChoices

Real Estate Appraiser
Enter Your Zip Code & Connect To Pre-Screened Real Estate Appraisers
www.ServiceMagic.com

Appraisal Management Tips
Tips on choosing the best AMC Service, Quality & Customizations!
www.Nationwide-Apprai...

What's My House Worth?
Find your home's current market value online with HouseValues.com.
www.HouseValues.com

3.625% APR 30 Year Fixed
No Points - No Fees - No Deposits! Take advantage now: 877-640-2360
CashCallMortgage.com

## Appraisers Petition

**Concerned Real Estate Appraisers from across America**
Submit the attached petition (Which was posted on appraisersforum.com):

To: Mr. Ben Henson - Executive Director
Appraisal Subcommittee (ASC)
Federal Financial Institutions Examination Council
email: benh1@asc.gov

cc: Other state or federal agencies with authority in the following matter

"The ASC's mission is to ensure that real estate appraisers, who perform appraisals in real estate transactions that could expose the United States government to financial loss, are sufficiently trained and tested to assure competency and independent judgment according to uniform high professional standards and ethics." From the ASC website.

The concern of this petition has to do with our "independent judgment" in performing real estate appraisals. We, the undersigned, represent a large number of licensed and certified real estate appraisers in the United States, who seek your assistance in solving a problem facing us on a daily basis. Lenders (meaning any and all of the following: banks, savings and loans, mortgage brokers, credit unions and loan officers in general; not to mention real estate agents) have individuals within their ranks, who, as a normal course of business, apply pressure on appraisers to hit or exceed a predetermined value.

This pressure comes in many forms and includes the following:

- the withholding of business if we refuse to inflate values,
- the withholding of business if we refuse to guarantee a predetermined value,
- the withholding of business if we refuse to ignore deficiencies in the property,
- refusing to pay for an appraisal that does not give them what they want,
- black listing honest appraisers in order to use "rubber stamp" appraisers, etc.

We request that action be taken to hold the lenders responsible for this type of violation and provide for a penalty on any person or business who engages in the practice of pressuring appraisers to do dishonest appraisals that do not provide for independent judgment. We believe that this practice has adverse effects on our local and national economies and that the potential for great financial loss exists. We also believe that many individuals have been adversely affected by the purchase of homes which have been over-valued.

We thank you for your cooperation and assistance.

**This petition is now closed for further signing. 11,000 signatures should be evidence enough that a problem exists and needs to be addressed.**

**Signed by:**

North Carolina Petition

AppraisersForum.com

AppraiserUSA.com

Privacy/Contact

Hosted by AppraiserSites.com

| No. | Name | Address | City, State, Zip Code |
|---|---|---|---|
| 11000. | Peter Schneider | 1096 Alta Vista Rd | Simi Valley, CA 93063 |
| Posted from: 75.16.42.54 | | | |
| 10999. | Edward J. Burchert | 4206 Owl Drive | Rolling Meadows, IL 60008 |
| Posted from: 75.57.140.28 | | | |
| 10998. | Zora Timotijevic | 1033 W 58th Street | LaGrange, IL 60525 |
| Posted from: 205.188.116.200 | | | |
| 10997. | Michael D Pippin | 2324 Dampton Dr | Plano, tx 75025 |

Posted from: 173.57.51.47

| | | | |
|---|---|---|---|
| 10996. | Barry Levenbaum | 5400 S.UNIVERSITY DRIVE, SUITE 215B | DAVIE, FL 33328 |

Posted from: 72.153.228.7

| | | | |
|---|---|---|---|
| 10995. | Steve Melton | 115 Cedarhurst Lane | Franklinton, NC 27525 |

Posted from: 75.189.230.161

| | | | |
|---|---|---|---|
| 10994. | Bernard J Williams | 654 D Street | Pasadena, MD 21122 |

Posted from: 205.188.116.200

| | | | |
|---|---|---|---|
| 10993. | Charles McMillan | 3925 NE 167th St | N. Miami Beach, FL 33160 |

Posted from: 66.229.57.201 Support the Rep. Manzullo Amend to HR1728

| | | | |
|---|---|---|---|
| 10992. | DEB ABEHSERA | Kingsway Finance Station Suite 2972 | brooklyn, NY 11229-7263 |

Posted from: 69.112.201.159

| | | | |
|---|---|---|---|
| 10991. | James Dougherty | 6 Meadow Ln. | downingtown, pa 19335 |

Posted from: 24.243.62.145

| | | | |
|---|---|---|---|
| 10990. | Angela Atherley-Hernandez | 2580 Carnation Way | Pahrump, NV 89048 |

Posted from: 166.155.225.200

| | | | |
|---|---|---|---|
| 10989. | Brandi Hayworth | 1601 Lake Knoll Dr. | Lake St. Louis, MO 63367 |

Posted from: 68.188.59.253

| | | | |
|---|---|---|---|
| 10988. | Mary Reimer | 210 Chestnut Road | Bridgeton, NJ 08302 |

Posted from: 67.142.130.47

| | | | |
|---|---|---|---|
| 10987. | Jacinto Munoz | 1336 West 9th Street | Upland, CA 91786 |

Posted from: 99.180.11.118

| | | | |
|---|---|---|---|
| 10986. | MICHAEL E. ROBINSON | 611 SAN LUIS REY DRIVE, STE. B | OCEANSIDE, CA 92058 |

Posted from: 72.197.6.74

| | | | |
|---|---|---|---|
| 10985. | Sidney Campa | 16100 Ash Street | Hesperia, CA 92345 |

Posted from: 71.177.16.21

| | | | |
|---|---|---|---|
| 10984. | Philip M. Kaiser | N6450 Hackett Rd | Hawkins, WI 54530 |

Posted from: 69.179.9.214

| | | | |
|---|---|---|---|
| 10983. | Donald G. Betz | 205 E. Joppa Road, Suite 2403 | Towson, MD 21286 |

Posted from: 69.250.30.42

| | | | |
|---|---|---|---|
| 10982. | Michael Davis | P.O. Box 1043 | heber springs, ar 72543 |

Posted from: 74.194.112.203 Work for cheap fees and get values wanted or no work.. Someone needs to put a stop to this where are the politicians..

| | | | |
|---|---|---|---|
| 10981. | Ann McGovern | 20 Lake Street | Brighton, MA 02135 |

Posted from: 151.203.103.52

| | | | |
|---|---|---|---|
| 10980. | Julio C. Guillen | 3164 Concord Blvd | Concord, Ca 94519 |

Posted from: 71.141.227.111

| | | | |
|---|---|---|---|
| 10979. | Michael W. Boteler | 105 Morgan Street | Florence, MS 39073 |

Posted from: 75.65.170.54

| | | | |
|---|---|---|---|
| 10978. | Jeffrey Adams | 12446 Orchard Wood Dr | Fenton, MI 48430 |

Posted from: 96.36.6.180

| | | | |
|---|---|---|---|
| 10977. | Lawrence J. Langley | 325 East A Street | Pomona, KS 66076 |

Posted from: 76.7.2.132

| | | | |
|---|---|---|---|
| 10976. | Allen Larsen | 614 E. Roosevelt Ave. | Salt Lake City, UT 84105 |

Posted from: 166.70.188.178

| | | | |
|---|---|---|---|
| 10975. | Patricia Kirk | 23014 Cuadro | Galveston, TX 77554 |

Posted from: 69.151.202.9

| | | | |
|---|---|---|---|
| 10974. | Mohammad Foroutan | 4676 Brewster drive , | Tarzana, Ca 91356 |

Posted from: 68.120.84.55

| | | | |
|---|---|---|---|
| 10973. | Sam Ward | 106 E. Adams St., Ste. 212 | Carson City, NV 89706 |

Posted from: 71.227.160.140 There should always be someone between the loan officer and appraiser.

| | | | |
|---|---|---|---|
| 10972. | Matt Goetz | 1259 Hidalgo Dr. | Laramie, WY 82072 |

Posted from: 69.146.42.167

| | | | |
|---|---|---|---|
| 10971. | Robert Imperato | 9319 Baltimore National Pike #124 | Ellicott City, MD 21042 |

Posted from: 98.233.228.218

| | | | |
|---|---|---|---|
| 10970. | Peter Carissimo | 17235 Citron | Irvine, CA 92612 |

Posted from: 68.5.15.227

| | | | |
|---|---|---|---|
| 10969. | Adam Judd | 2903 Timberlake Dr. | Orlando, FL 32806 |

Posted from: 65.33.143.148

| | | | |
|---|---|---|---|
| 10968. | Christopher J. Tholberg | 19830 Friar St | Woodland Hills , Ca 91367 |

Posted from: 75.22.45.126

| | | | |
|---|---|---|---|
| 10967. | Mark DeMoss | 302 Timberwood | North Enid, OK 73701 |

Posted from: 74.195.202.178

| | | | |
|---|---|---|---|
| 10966. | Bogdan | 1739 Tice Valley Blvd. | Walnut Creek, Ca 94595 |

Posted from: 24.6.242.142

| | | | |
|---|---|---|---|
| 10965. | Matthew Frentheway | 190 N. Main St | Heber City, UT 84032 |

Posted from: 75.162.191.30

| | | | |
|---|---|---|---|
| 10964. | Robert Lawrence | 75 646 Nani Ohai Place | Kailua, HI 96740 |

Posted from: 70.95.52.11 37 years been there done that Hawaii now but most States in the USA

| | | | |
|---|---|---|---|
| 10963. | Mark Chandler | 75 Klebart Avenue | Webster, MA 01570 |

Posted from: 68.118.235.209

| | | | |
|---|---|---|---|
| 10962. | Frank Guzzetti | 21 Edmands Street #3 | Somerville, Ma 02145 |

Posted from: 209.6.132.240

| | | | |
|---|---|---|---|
| 10961. | Theresa Pearson | 6856 Mackall Rd | St leonard, MD 20685 |

Posted from: 68.49.34.223

| | | | |
|---|---|---|---|
| 10960. | Tonya Jones | 4918 N. Melrose Ave. | Tampa, FL 33629 |

Posted from: 71.100.166.52

| | | | |
|---|---|---|---|
| 10959. | Jefferson Hill | 3609 Parrett Avenue | Napa, CA 94558 |

Posted from: 76.103.160.224

| | | | |
|---|---|---|---|
| 10958. | Hogan E. Copeland II | 690 Ponte Vedra Boulevard | Ponte Vedra Beach, FL 32082 |

Posted from: 68.214.72.215

| | | | |
|---|---|---|---|
| 10957. | Lisa Santoro | 528 Willow St. | Itasca, IL 60143 |

Posted from: 67.167.88.90 I'm one step away from leaving this profession due to 3Xs the work/liability and less than 1/2 the fee!

| | | | |
|---|---|---|---|
| 10955. | Lanny Freng | 514 Elm St | Farmington, MN 55024 |

Posted from: 97.88.232.66 AMCs=reduced fees=qualified professionals exiting the profession=perpetually lower quality appraisals=the next meltdown

| | | | |
|---|---|---|---|
| 10954. | Vince Landolina | 1229 Marymar Dr. | Modesto, CA 95355 |

Posted from: 75.53.176.184 I'm sick of the pressure

| | | | |
|---|---|---|---|
| 10953. | jimmy kim | 13517 Hartland St | Van Nuys, CA 91102 |

Posted from: 71.147.7.215

| | | | |
|---|---|---|---|
| 10952. | Jeff Botkin | 5889 SW 29th | Topeka, ks 66614 |

Posted from: 69.150.152.204

| | | | |
|---|---|---|---|
| 10951. | Michael Hatley | 2020 Robinwood Dr | Fort Worth, TX 76111 |

Posted from: 99.200.233.27

| | | | |
|---|---|---|---|
| 10950. | INGRID LEVERETT | 111 lake park drive | Belle Chasse, LA 70037 |

Posted from: 74.228.141.41 MY PROPBLEM IS BEING BLACKLISTED WITHOUT KNOWING WHY AND I THINK IT HAS HAPPENED TO ME FOR NOT HITTING VALUES

| | | | |
|---|---|---|---|
| 10949. | Lukasz Tomaszewski | 5342 W Eddy Street | Chicago, IL 60641 |

Posted from: 24.13.143.60 Stop the HVCC

10947. Celeste Zayac 215 lakeshore drive dracut, ma 01826
Posted from: 98.216.162.171 stop the hvcc

10946. Joe McGuire 406 Lincoln Lane Avon-by-the-Sea, NJ 07717
Posted from: 64.12.116.200

10945. Brian Schroeder 23 Rochester St Scottsville, NY 14546
Posted from: 72.230.156.97

10944. Trisha Clark 2332 Taraval St. #1 San Francisco, CA 94116
Posted from: 76.220.105.118

10943. Jamice Welbon 158 School Street Daly City, CA 94014
Posted from: 70.1.124.61 I am completely opposed to working for AMC. They are crooks who only care about helping the banks make even more money.

10942. Mark Mathewson PO Box 2045 Carson City, NV 89702
Posted from: 75.0.6.52 I am opposed to this legislation as a businessman and small business owner.

10941. Christopher Newman Jourdan 272 Highland Drive Mandeville, LA 70471
Posted from: 74.236.156.102 To the ASC:

10940. Steven Rosenblatt 9504 Harbor Lights Drive ocean city, MD 21811
Posted from: 67.162.236.77

10939. Paul Steele 2904 W Milham Portage, MI 49024
Posted from: 75.48.230.204

10938. ted thurman 14930 old highway 68 siloam springs, ar 72761
Posted from: 75.120.159.197 they are qualified and take half of appraisal fees

10937. LEONARD BALDUCCI 880 RIFLE CAMP ROAD WOODLAND PARK, NJ 07424
Posted from: 96.240.28.2 APPRAISER HAS NO CONTROL AND AGAIN WILL BE UNDER THE PRESSURE OF AMC

10936. Nathaniel Cramer 14 Travelled Way North Reading, MA 01864
Posted from: 24.147.211.58

10934. Gregg White 8629 Lake Country Drive Fort Worth, Tx 76179
Posted from: 68.189.214.57 I am a State Certified Residential Appraiser with over 29 years experience in the industry. I am totally opposed to this.

10924. Everett VanDerWeerd California Newport Beach, Ca 92663
Posted from: 71.133.87.200

10923. James Wright Jr 4148 Lafayette Street Marianna, FL 32321
Posted from: 65.40.26.18

10922. David Niehaus 6522 Denny Peak DR SE Snoqualmie, WA 98065
Posted from: 98.203.147.120

10921. Todd Reynolds 12319 N 147th Lane Surprise, AZ 85379
Posted from: 72.222.188.211

10920. Wanda Collins 2008 Ohio Street Bluefield, WV 24701
Posted from: 74.34.138.12

10919. Claudette Garavaglia 21731 randall farmington hills, mi 48336
Posted from: 75.45.79.168

10918. C. Donald Lackey 118 cotton road shelby, NC 28150
Posted from: 24.74.121.162

10917. JC Cliett 5001 Wilshire Blvd #112 Los Angeles, CA 90036
Posted from: 76.168.86.201 Stop the HVCC

10916. Bradley Nelson 5005 N. 28TH St Tacoma, WA 98407
Posted from: 131.191.48.69

10915. John Ferguson P.O. Box 816 Wheatland, CA 95692
Posted from: 207.12.220.98 Enforcement is the key hanging some bankers and appraisers will go a long way!

10914. Sean L. Barsky 98 Tremont Street Ansonia, CT 06401
Posted from: 76.23.203.34 AMCs are NOT the answer. They're just as bad as the mortgage Brokers!

10913. John Brooks 23029 Hoffman st clair shores, mi 48082
Posted from: 198.111.163.209

10912. Charles Weston 747 Dixie Lane Plainfield, NJ 07062
Posted from: 98.109.123.198

10911. Danielle L Bannon 3 Clearview Avenue Glassboro, NJ 08028
Posted from: 96.248.78.143

10910. Ramiro Garza Jr. 943 N. Expressway Ste. 15-150A Brownsville, TX 78520
Posted from: 64.219.147.181 Honest working appraisers should have better treatment.

10909. Victoria L. Gill 42 Courtright Rd wantage, nj 07461
Posted from: 71.48.96.73

10908. Nick Osnato 239 Sea Pine Drive Egg Harbor Twp., NJ 08234
Posted from: 68.80.237.48 If we are on such a list, we should have every right to get our names off. As it stands now, there's not much we can do.

10907. Marina Clary 3512 Marsala way Modesto, CA 95356

Posted from: 75.208.137.221 This has and still happens to me. I am all for this petition.

10906. Rian M. Esposito 1901 S. Hollywood Street Philadelphia, PA 19145
Posted from: 71.175.248.196

10905. Matthew G. Blakely 506 Indianwood Dr. Caol Stream , IL 60188
Posted from: 67.184.81.84

10904. Dick Miletich 4000 Ashford Circle hollister, CA 95023
Posted from: 208.101.229.149

10903. Linda M Gardner 106 Lake Hayes Trenton, TN, TN 38382
Posted from: 169.130.8.14 If we do not get paid at the door, we do not get paid, even for FHA's

10902. Freddie Berry 1646 Universal Drive Stockton, CA 95206
Posted from: 76.20.112.121

10901. Richard 2503 Custer Odessa, Tx 79761
Posted from: 75.31.15.183

10900. David Valera 3730 SW 99th Avenue Miami, FL 33165
Posted from: 76.109.207.122

10899. Randy Davidson PO Box 450825 Grove, OK 74345
Posted from: 70.234.190.20

10898. Terri L Davidson PO Box 450825 Grove, OK 74345
Posted from: 70.234.190.20

10897. David T. Proffitt 3558 Arthur Rd. Crete , IL 60417
Posted from: 67.186.74.54

10896. Geremie Howard 7223 Camel Rock Way Citrus Heights, CA 95610
Posted from: 64.113.113.209

10895. William A. Moores Sr 229 Candlewick Ave Spring Hill, FL 34608
Posted from: 24.161.250.88

10894. Jonathan F. William 1236 Blue Ridge Blvd Hoover, AL 35226
Posted from: 216.180.113.129

10893. Sonja Frisby-Corcoran PO Box Box 6 New Waverly, TX 77358
Posted from: 205.188.116.200

10892. Daniel R. Holland 5757 Pineknoll Ct SE Kentwood, MI 49508
Posted from: 69.51.137.174 Mortgage fraud will not stop until the originating lender is required to maintain an ownership in each mortgage until paid.

10891. Jeff Davis PO Box 415 azenovia, NY 13035
Posted from: 74.45.16.84

10890. Michael Mc Intyre 136 park avenue East Wareham, MA 02538

Posted from: 76.24.167.224 Force lenders to hold a % of their subprime loans in house(higher % for lower scores or $0 downpayments)

10889. Peggy R. Kee 1134 Hickory Grove Rd. starkville, Ms 39759

Posted from: 205.188.117.70 appraisal on my property appraised wrong with fence post in wrong direction

10888. David Mack McClain 7465 Tatum Woods Drive Cumming, GA 30028

Posted from: 74.176.223.63

10887. Michael W. Shannon 303 South Broadway, #200-307 Denver, co 80209

Posted from: 71.196.241.115 I believe it is equally important for there to be a viable way to report and enforce these violations, for any of them to wor

10886. Peter Borra 3285 Ocean Front Walk Suite 5 San Diego, CA 92109

Posted from: 71.136.70.67

10885. THOMAS QUIRK 9541 LACKLAND RD ST.LOUIS, MO 63114

Posted from: 71.10.188.130 MAKE THE NUMBERS OR WE'LL LEAVE WITHOUT YOU

10884. D. Kim Cudd 1819 Ray Ave. Bossier City, La 71112

Posted from: 74.193.184.26

10883. William A Moores 229 Candlewick Avenue Spring Hill , FL 34608

Posted from: 24.161.250.88

10882. Don Mrskos 9222 So. Mozart Ave. Evergreen Park , Il 60805

Posted from: 24.7.254.10

10881. Tina L. Basharel 8236 Ocean Terrace Way Las Vegas, NV 89128

Posted from: 68.108.24.24 Numbers, a force to be reckoned with..

10880. Diana Nytko 5 Darina Place Milford, , CT 06460

Posted from: 205.188.117.70

10879. Mark Cordrey 8319 Angola Road Holland, OH 43528

Posted from: 205.188.117.70 About time we as appraisers stand up. We are professionals, lets get treated like one!

10878. NICHOLAS SAULLE 2231 NW 41 AVENUE COCONUT CREEK, FL 33066

Posted from: 72.144.40.148

10877. Christine Hill 28517 111th Street Zimmerman, MN 55398

Posted from: 71.37.241.168

10876. Larry K. Martineau 2239 Townsgate Road #202 Westlake Village, CA 91361

Posted from: 71.109.229.68

10875. Jerry Ball 654 NW 21st Court Redmond, OR 97756

Posted from: 207.225.93.54 Some lenders will "not" remove your name from the accepted list, just put in into their list of appraisers for reviews.

10874. David M. Maddox 7381 San Pablin St Las Vegas, NV 89139

Posted from: 71.49.171.22

10873. Chris Staley 2016 STRACKER WAY modesto, ca 95350

Posted from: 69.225.32.18 Thank you for doing the right thing!

10872. Staci D. Bracken 8401 W 115th St Overland Park, KS 66210

Posted from: 70.94.219.85

10871. howard hullett 2391 s center st hickory, nc 28602

Posted from: 97.82.149.4

10870. Tanya Bates 172 Aruba Drive Saratoga Springs, UT 84045

Posted from: 208.53.47.232

10869. Joanne Wait 40 Treign Drive N.Syracuse, ny 13212

Posted from: 74.79.103.22

10868. Michael D. Kelley PO BOX 774 Connellsville, PA 15425

Posted from: 24.154.74.175

10867. Rebecca G. Gerstle 4195 Williams Ct Dumfries, VA 22026

Posted from: 173.66.221.206

| | | |
|---|---|---|
| 10866. GARY CARYL | 36385 N. WESLEY RD. | INGLESIDE, IL 60041 |
| Posted from: 99.144.223.22 | | |
| 10865. James Hayes | 2623 14th Avenue NW | Gig Harbor, WA 98335 |
| Posted from: 76.28.216.136 | | |
| 10864. Paul Watson | 6140 N. Van Ark Rd. | Tucson, AZ 85743 |
| Posted from: 216.183.65.49 | | |
| 10863. Susan Gordon | 1704 Francis Street | Carrollton, TX 75006 |
| Posted from: 76.187.201.143 | | |
| 10862. wendy shiner | 843 leopard tr | winter springs, fl 32708 |
| Posted from: 72.186.157.62 | | |
| 10861. George Paquette | 419 Main Street #475 | Huntington Beach, CA 92648 |
| Posted from: 98.148.85.200 | | |
| 10860. Peter Steinhagen | 6420 W. Cermak Rd. | Berwyn, IL 60402 |
| Posted from: 67.89.95.106 | | |
| 10859. Jarrad Stephens | 3911 E. Murray Court | Visalia, Ca 93292 |
| Posted from: 98.224.97.65 | | |
| 10858. Elizabeth N. Hodges | 6320 FIVE MILE CENTRE PARK | FREDERICKSBURG, VA 22407 |
| Posted from: 74.95.98.9 | | |
| 10857. Ann Perrett | 2176 James Rd | Memphis , TN 38127 |
| Posted from: 66.32.62.183 | | |
| 10856. Steve Henderson | 2111 Elm Ave | Grand Junction, CO 81501 |
| Posted from: 72.174.76.243 | | |
| 10855. Dennis Stubee | 12640 SW 97th Place | Miami, FL 33176 |
| Posted from: 65.7.196.215 | | |
| 10854. ROBIN SLATER | 20 WOODBRIDGE PLACE | LANGHORNE, PA 19053 |
| Posted from: 69.139.29.249 | | |
| 10853. Daniel E. Williams | 24848 Half Dome Court | Murrieta, CA 92562 |
| Posted from: 76.175.133.100 | | |
| 10852. Neil Goldstein | 8145 SW 87th Ave | Portland, OR 97223 |
| Posted from: 75.175.39.253 | | |
| 10851. Robert Dolan | 29 Marshall Terrace | Wayland, MA 01778 |
| Posted from: 96.233.44.131 01778 | | |
| 10850. Dain Mickey | P.O. Box 517 | Junction City, OR 97448 |
| Posted from: 67.169.195.189 | | |
| 10849. Sondra Scott | 23138 Calico Corners Ln | Spring, TX 77373 |
| Posted from: 75.71.114.46 | | |
| 10848. mimi nealy | 1 river ridge trail | ormond beach, fl 32174 |
| Posted from: 72.188.42.146 | | |
| 10847. Kevin McKnelly | 22207 Birmingham Place | Santa Clarita, CA 91350 |
| Posted from: 98.148.20.212 Help us please! | | |
| 10846. Paul Balsamo | 59 east jackson avenue | babylon, ny 11702 |
| Posted from: 205.188.117.70 | | |
| 10845. Karen Swartz | 1492 Robinson Dr. N. | St. Petersburg, Fl 22710 |
| Posted from: 72.185.253.21 | | |
| 10844. Raymond L. Blau | 532 Vestry Drive | Ambler, PA 19002 |
| Posted from: 72.92.86.160 | | |
| 10843. Tammy Zalewski | Glacier Drive | Hubertus, wi 53033 |

Posted from: 69.210.46.188

| | | | |
|---|---|---|---|
| 10842. | Matt Beiseigel | 2519 N Ocean Blvd. #306 | Boca Raton, FL 33431 |

Posted from: 76.109.101.140 There needs to be oversight of the mortgage brokers.

| | | | |
|---|---|---|---|
| 10841. | Matthew Smith | 1517 Pennsylvania Ave N. Suite #10 | Golden Valley, MN 55427 |

Posted from: 24.118.114.65

| | | | |
|---|---|---|---|
| 10840. | Bryan Green | 1815 Sherwood Drive | Tallahassee, FL 32303 |

Posted from: 98.230.43.156

| | | | |
|---|---|---|---|
| 10839. | Allison Edward Hays | 1221 SE 130th Ave | Portland, OR 97233 |

Posted from: 76.105.215.108

| | | | |
|---|---|---|---|
| 10838. | Caron Smith | 273 Newton Road | Fredericksburg, VA 22405 |

Posted from: 74.95.98.9

| | | | |
|---|---|---|---|
| 10837. | Herman Bustamante | 231 Fleming Ave | Vallejo, CA 94590 |

Posted from: 70.137.134.31 Thank you

| | | | |
|---|---|---|---|
| 10836. | Chanin Stuard | 6189 Buzzard Creek Road | Cedar Hill, TN 37032 |

Posted from: 64.12.117.70

| | | | |
|---|---|---|---|
| 10835. | Marc Wright | 9475 W. Kentucky Avenue | Lakewood , CO 80226 |

Posted from: 24.8.113.35

| | | | |
|---|---|---|---|
| 10834. | Kyle Michels | 5019 Everett | Amarillo, TX 79106 |

Posted from: 74.197.89.157

| | | | |
|---|---|---|---|
| 10833. | Diana Berlin-Smith | 18215 Fontana Ct | Reno, NV 89508 |

Posted from: 75.14.196.206

| | | | |
|---|---|---|---|
| 10832. | leroy turner | P.O. Box 2263 | salisbury, md 21802 |

Posted from: 98.192.214.179

| | | | |
|---|---|---|---|
| 10831. | gerard forde | 390 alcatraz avenue | oakland, ca 94618 |

Posted from: 71.132.195.38

| | | | |
|---|---|---|---|
| 10830. | Alpay Onder | 26100 American Drive Suite 606 | Southfield, MI 48034 |

Posted from: 208.65.84.14

| | | | |
|---|---|---|---|
| 10829. | Ronald S. Plott, Jr. | 365 Eureka Road | Charleston, WV 25314 |

Posted from: 75.108.202.44

| | | | |
|---|---|---|---|
| 10828. | Ed Connor | 120 State Ave NE, #263 | Olympia, Wa 98501 |

Posted from: 71.231.166.25 AMC's pull the rug-now they want the pad & floor! Contact state reps. AMC's have vested interest 4 getting value-Title Co's!

| | | | |
|---|---|---|---|
| 10827. | Donald Rich | 101 Hamilton Ave | Leonardo, NJ 07737 |

Posted from: 68.84.232.14 HVCC is not the solution...AMC's add NO value, but grab half the fee.

| | | | |
|---|---|---|---|
| 10826. | Clifton Alligood | 3151 NE 56th Avenue, Lot M7 | Silver Springs , Fl 34488 |

Posted from: 98.190.40.68

| | | | |
|---|---|---|---|
| 10825. | Gail Hunt | P.O. Box 704 | Branford, FL 32008 |

Posted from: 71.31.105.57

| | | | |
|---|---|---|---|
| 10824. | Shanda Heacock | 9732 State Route 445 PMB 312 | Sparks, NV 89441 |

Posted from: 209.78.20.213

| | | | |
|---|---|---|---|
| 10823. | James Forquer | 2078 Magellan Drive | Oakland, CA 94611 |

Posted from: 24.130.229.143

| | | | |
|---|---|---|---|
| 10822. | Jill Korn | P.O. Box 1207 | Sparks, NV 89432 |

Posted from: 64.149.159.165

| | | | |
|---|---|---|---|
| 10821. | Brian Fosseen | 1005 n tanglewood ln | liberty lake , wa 99019 |

Posted from: 65.61.105.10

| | | | |
|---|---|---|---|
| 10820. | Benjamin Weis | 304 W. Freidel Dr. | Marshall, WI 53559 |

Posted from: 66.168.31.131

| | | |
|---|---|---|
| 10819. Larry Halm | 6735 Garrison Street | Arvada, CO 80004 |
| Posted from: 67.165.222.159 | | |
| 10818. Cary Wiest | 50 HoodsPoint Way | San Mateo, CA 94402 |
| Posted from: 75.30.112.45 | | |
| 10817. Don Ross | P O Box 6046 | Florence, KY 41022 |
| Posted from: 216.196.175.231 | | |
| 10816. Joseph Lorinc | 1855 52nd Street Southwest | Naples, FL 34116 |
| Posted from: 71.3.210.113 | | |
| 10815. Robert D. Coop | 611 E. Telegraph Street | Carson City, NV 89701 |
| Posted from: 64.148.147.130 | | |
| 10814. Dennis Duckett | P.O. Box 28016 | Green Bay, WI 54324 |
| Posted from: 75.8.36.223 | | |
| 10813. Mark H. Cole | 740 County Road 4122 | Campbell, Tx 75422 |
| Posted from: 69.46.59.146 | | |
| 10812. Kyle Cousineau | P.O. Box 28016 | Green Bay, WI 54324 |
| Posted from: 75.8.36.223 | | |
| 10811. JOSEPH DONOFRIO | P.O. BOX417 | FARMINGDALE, NJ 07727 |
| Posted from: 67.83.93.210 | | |
| 10810. Steve Souza | 1247 Country Club Cove | Bullhead City, AZ 86442 |
| Posted from: 74.33.45.93 Blacklisted from CW for not reconsidering value | | |
| 10809. Scott Williams | 13330 fort st | southgate, mi 48195 |
| Posted from: 68.43.67.144 | | |
| 10808. kambiz Safa | 28 Palmento Way | Irvine, Ca 92612 |
| Posted from: 69.234.110.42 | | |
| 10807. Brian Vaughan | po box 3931 | Pagosa Springs, CO 81147 |
| Posted from: 75.121.85.230 | | |
| 10806. N Lindley | West View Dr | Berkeley, CA 94705 |
| Posted from: 67.169.58.59 | | |
| 10805. Teresa Biggers | 4403 CR 3140 | Lone Oak, TX 75453 |
| Posted from: 64.202.228.153 | | |
| 10804. Anthony Benanti | 424 B 133rd St | Belle Harbor, NY 11694 |
| Posted from: 12.145.184.18 Honesty, Integrity, Professionalism, remember those? | | |
| 10803. Donene Berry | 818 W 20th | Merced, ca 95340 |
| Posted from: 74.60.159.237 | | |
| 10802. Roger Harter | 645 Dorsey Court | Centerville, OH 45459 |
| Posted from: 24.123.235.80 | | |
| 10801. rocco buffone | 8 deerfield dr | greensburg, pa 15601 |
| Posted from: 67.163.250.209 I wish | | |

**Go to Top of Page**

View Signatures 1-200 View Signatures 201-400 View Signatures 401-600 View Signatures 601-800
View Signatures 801-1100 View Signatures 1101-1400 View Signatures 1401-1700 View Signatures 1701-1900
View Signatures 1901-2200 View Signatures 2201-2500 View Signatures 2501-2700 View Signatures 2701-2900
View Signatures 2901-3100 View Signatures 3101-3300 View Signatures 3301-3500 View Signatures 3501-3700
View Signatures 3701-3900 View Signatures 3901-4100 View Signatures 4101-4300 View Signatures 4301-4500
View Signatures 4501-4700 View Signatures 4701-4900 View Signatures 4901-5100 View Signatures 5101-5300
View Signatures 5301-5500 View Signatures 5501-5700 View Signatures 5701-5900 View Signatures 5901-6100
View Signatures 6101-6300 View Signatures 6301-6500 View Signatures 6501-6700 View Signatures 6701-6900
View Signatures 6901-7100 View Signatures 7101-7300 View Signatures 7301-7500 View Signatures 7501-7700
View Signatures 7701-7900 View Signatures 7901-8100 View Signatures 8101-8300 View Signatures 8301-8500

View Signatures 8501-8700   View Signatures 8701-8900   View Signatures 8901-9100   View Signatures 9101-9300
View Signatures 9301-9500   View Signatures 9501-9700   View Signatures 9701-9900   View Signatures 9901-10100
View Signatures 10101-10400   View Signatures 10401-10800

Home | AppraisersForum.com | AppraiserUSA.com | Contact

Copyright © 2000-2009



**PRIME LEGAL SERVICES LLC**
**1135 CLIFTON AVENUE, SUITE 207 CLIFTON, NJ 07013**
**Phone: (973) 471-3381; Sales@PrimeLegalllc.com**
**WWW.PRIMELEGALSVC.COM**

# *PROPERTY SECURITIZATION ANALYSIS REPORT™*

"This is a Securitization Analysis Report and not a Forensic Audit Report"

*Prepared for:*

**Hoffberg & Associates, P.C.**

***RICHARD EVALOBO & PRISCILLA SANTOS CORTEZ***
***1020 ZURICH AVENUE***
***HENDERSON NV, 89015***

*Completion Date:*
*January 24, 2012*

**Disclosure: You have engaged Prime Legal Services, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to Practice of Law § 21(1) it is the intent of Prime Legal Services, LLC, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: "Except as provided below, no person shall practice law in this State unless that person is an attorney holding a plenary license to practice in this State, has complied with the Rule 1:26 skills and methods course requirement in effect on the date of the attorney's admission, is in good standing, and, except as provided in paragraph (d) of this Rule, maintains a *bona fide* office for the practice of law."**

EXHIBIT 4

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



PRIME
LEGAL SERVICES, LLC

# SECTION 1: TRANSACTION DETAILS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| RICHARD EVALOBO | PRISCILLA SANTOS CORTEZ |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 1020 ZURICH AVENUE HENDERSON, NV 89015 | 1020 ZURICH AVENUE HENDERSON, NV 89015 |

## TRANSACTION PARTICIPANTS

| MORTGAGE BROKER | MORTGAGE SERVICER | MORTGAGE MORTGAGE NOMINEE/BENEFICIARY |
|---|---|---|
| N/A | AURORA BANK, FSB | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. |
| **ORIGINAL MORTGAGE LENDER** | **MORTGAGE TRUSTEE** | **TITLE COMPANY** |
| ALLIANCE BANCORP | CHICAGO TITLE COMPANY | N/A |

"COPYRIGHT 2011 ... COPYRIGHT 2011
-All Rights Reserved-



PRIME
LEGAL SERVICES, LLC

# SECTION 2: SECURITIZATION

## SECURITIZATION PARTICIPANTS:

| ORIGINATOR/LENDER | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| ALLIANCE BANCORP | LEHMAN BROTHERS HOLDING INC. | STRUCTURED ASSET SECURITIES CORPORATION |
| **ISSUING ENTITY** | **TRUSTEE** | **MASTER SERVICER/ SERVICER** |
| LEHMAN XS TRUST, SERIES 2006-3 | U.S. BANK NATIONAL ASSOCIATION | AURORA LOAN SERVICES, LLC |
| **CUSTODIAN** | **CUT – OFF DATE** | **CLOSING DATE** |
| LASALLE BANK N.A. | FEBRUARY 1, 2006 | ON OR ABOUT FEBRUARY 28, 2006 |

"COPYRIGHT 2011 COPYRIGHT 2011
-All Rights Reserved-



PRIME
LEGAL SERVICES, LLC

$821,923,000
(Approximate)

**LEHMAN XS TRUST**
Mortgage Pass-Through Certificates, Series 2006-3

AURORA LOAN SERVICES
*A Lehman Brothers Company*

**AURORA LOAN SERVICES**
Aurora Loan Services LLC
Master Servicer

Lehman XS Trust 2006-3
Issuing Entity

LEHMAN BROTHERS

Lehman Brothers Holdings Inc.
Sponsor and Seller

Structured Asset Securities Corporation
Depositor

"COPYRIGHT 2011 COPYRIGHT 2011
-All Rights Reserved-



PRIME
LEGAL SERVICES, LLC

*Summary of Terms*

- This summary highlights selected information from this document and does not contain all of the information that you need to consider in making your investment decision. To understand all of the terms of the offering of the certificates, it is necessary that you read carefully this entire document and the accompanying prospectus.

- While this summary contains an overview of certain calculations, cash flow priorities and other information to aid your understanding, you should read carefully the full description of these calculations, cash flow priorities and other information in this prospectus supplement and the accompanying prospectus before making any investment decision.

- Some of the information that follows consists of forward-looking statements relating to future economic performance or projections and other financial items. Forward-looking statements are subject to a variety of risks and uncertainties, such as general economic and business conditions and regulatory initiatives and compliance, many of which are beyond the control of the parties participating in this transaction. Accordingly, what actually happens may be very different from the projections included in this prospectus supplement.

- Whenever we refer to a percentage of some or all of the mortgage loans in the trust fund, that percentage has been calculated on the basis of the total scheduled principal balance of those mortgage loans as of February 1, 2006, unless we specify otherwise. We explain in this prospectus supplement under "Glossary of Defined Terms" how the scheduled principal balance of a mortgage loan is determined. Whenever we refer in this summary of terms or in the risk factors section of this prospectus supplement to the total principal balance of any mortgage loans, we mean the total of their scheduled principal balances unless we specify otherwise.

Parties

**Sponsor and Seller**

Lehman Brothers Holdings Inc. will sell the mortgage loans to the depositor.

**Depositor**

Structured Asset Securities Corporation, a Delaware special purpose corporation, will sell the mortgage loans to the issuing entity. The depositor's address is 745 Seventh Avenue, New York, New York 10019, and its telephone number is (212) 526-7000.

**Issuing Entity**

Lehman XS Trust, Series 2006-3, a common law trust formed under the laws of the State of New York.

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



**Trustee**

   U.S. Bank National Association

**Master Servicer**

   Aurora Loan Services LLC, an affiliate of the seller, the depositor, one of the servicers and Lehman Brothers Inc., will oversee the servicing of the mortgage loans by the servicers.

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



PRIME
LEGAL SERVICES, LLC

***Assignment of Mortgage Loans***

The Mortgage Loans will be assigned by the Depositor to the Trustee, together with all principal and interest received with respect to such Mortgage Loans on and after the Cut-off Date (other than Scheduled Payments due on that date). The Trustee will, concurrently with such assignment, authenticate and deliver the Certificates. Each Mortgage Loan will be identified in a schedule appearing as an exhibit to the Trust Agreement which will specify with respect to each Mortgage Loan, among other things, the original principal balance and the Scheduled Principal Balance as of the close of business on the Cut-off Date, the Mortgage Rate, the Scheduled Payment, the maturity date, the Servicer and the Custodian of the mortgage file and the applicable Prepayment Premium provisions, if any.

As to each Mortgage Loan, the following documents are generally required to be delivered to the applicable Custodian on behalf of the Trustee in accordance with the Trust Agreement: (1) the related original mortgage note endorsed without recourse to the Trustee or in blank, (2) the original Mortgage with evidence of recording indicated thereon (or, if such original recorded Mortgage has not yet been returned by the recording office, a copy thereof certified to be a true and complete copy of such Mortgage sent for recording), or, in the case of a Cooperative Loan, the original security agreement and related documents (3) an original assignment of the Mortgage to the Trustee or in blank in recordable form (except as described below), or, in the case of a Cooperative Loan, the original assignment of security agreement and related documents (4) the policies of title insurance issued with respect to each Mortgage Loan and (5) the originals of any assumption, modification, extension or guaranty agreements. With respect to certain Servicers, it is expected that the Mortgages or assignments of Mortgage with respect to each Mortgage Loan will have been recorded in the name of an agent on behalf of the holder of the related mortgage note. In that case, no Mortgage assignment in favor of the Trustee will be required to be prepared, delivered or recorded. Instead, the related Servicer will be required to take all actions as are necessary to cause the Trustee to be shown as the owner of the related Mortgage Loan on the records of the agent for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by the agent.

Each transfer of a Mortgage Loan from the Seller to the Depositor and from the Depositor to the Trustee will be intended to be a sale of that Mortgage Loan and will be reflected as such in the Sale and Assignment Agreement and the Trust Agreement, respectively. However, in the event of insolvency of a prior owner of a Mortgage Loan, a trustee in bankruptcy or a receiver or creditor of the insolvent party could attempt to re-characterize the sale of that Mortgage Loan by the insolvent party as a financing secured by a pledge of the Mortgage Loan. The Trustee's security interest will be perfected by delivery of the Mortgage Notes to the applicable Custodian on behalf of the Trustee.

**424B5:**
http://www.sec.gov/Archives/edgar/data/808851/000089109206000507/e23475_424b5.txt

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



STRUCTURED ASSET SECURITIES CORPORATION,
as **Depositor,**

AURORA LOAN SERVICES LLC,
as **Master Servicer,**

and

U.S. BANK NATIONAL ASSOCIATION,
as **Trustee**

---

TRUST AGREEMENT

Dated as of February 1, 2006

---

**LEHMAN XS TRUST**
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2006-3

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



ARTICLE II

CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

SECTION 2.01. Conveyance of Mortgage Loans.

(a) Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02, 2.04, 2.05 and 2.06, in trust, all the right, title and interest of the Depositor in and to the Mortgage Loans. Such conveyance includes, without limitation, the right to all payments of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date (other than payments of principal and interest due on or before such date), and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date together with all of the Depositor's right, title and interest in and to the Collection Account, the Certificate Account and all amounts from time to time credited to and the proceeds of the Certificate Account, any Custodial Accounts, any Escrow Account established pursuant to Section 9.06, the Basis Risk Reserve Fund established pursuant to Section 5.06, the Class X Account established pursuant to Section 5.11 and all amounts from time to time credited to and the proceeds of each such account, any REO Property and the proceeds thereof, the Depositor's rights under any Insurance Policies related to the Mortgage Loans, the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties, and any proceeds of the foregoing, to have and to hold (or a Custodian on its behalf), in trust; and the Trustee declares that, subject to the review provided for in Section 2.02, it has received and shall hold the Trust Fund, as trustee, in trust, for the benefit and use of the Holders and for the purposes and subject to the terms and conditions set forth in this Agreement, and, concurrently with such receipt, has caused to be executed, authenticated and delivered to or upon the order of the Depositor, in exchange for the Trust Fund, Certificates in the authorized denominations evidencing the entire ownership of the Trust Fund.

Concurrently with the execution of this Agreement, the Swap Agreement shall be delivered to the Trustee. In connection therewith, the Depositor hereby authorizes and directs the Trustee (solely in its capacity as such) to execute and deliver the Swap Agreement (on behalf of the Supplemental Interest Trust), in trust for the benefit of the Offered Certificateholders. The Seller, the Master Servicer, the Depositor, the Servicer and the Offered Certificateholders (by their acceptance of such Certificates) acknowledge and agree that the Trustee is executing and delivering the Swap Agreement solely in its capacity as Trustee of the Supplemental Interest Trust, and not in its individual capacity. The Depositor hereby authorizes and directs the Trustee to represent in the Swap Agreement that it is not required by any applicable law of any relevant jurisdiction to make any deduction or withholding for or on account of any tax from Net Swap Payment. The Trustee shall have no duty or responsibility to enter into any other interest rate swap agreement upon the expiration or termination of the Swap Agreement.

COPYRIGHT 2011 COPYRIGHT 2011
-All Rights Reserved-



Concurrently with the execution and delivery of this Agreement, the Depositor does hereby assign to the Trustee all of its rights and interest under the Mortgage Loan Sale Agreement, including all rights of the Seller under each related Servicing Agreement and each related Transfer Agreement (other than first payment date default or early payment date default rights against the related Transferor) but, in each case, only to the extent assigned under the Mortgage Loan Sale Agreement. The Trustee hereby accepts such assignment and delegation, and shall be entitled to exercise all the rights of the Depositor under the Mortgage Loan Sale Agreement as if, for such purpose, it were the Depositor. The foregoing sale, transfer, assignment, set-over, deposit, delegation and conveyance does not and is not intended to result in the creation or assumption by the Trustee of any obligation of the Depositor, the Seller or any other Person in connection with the Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth therein.

(b) In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or the applicable Custodian acting on the Trustee's behalf, the following documents or instruments with respect to each Mortgage Loan (each a "Mortgage File") so transferred and assigned:

(i) with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, as shown on Exhibit B-4 hereto, or in blank (in each case, with all necessary intervening endorsements, as applicable) or with respect to any lost Mortgage Note, a lost note affidavit stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note;

(ii) if applicable, the original of any guarantee, security agreement or pledge agreement executed in connection with the Mortgage Note, assigned to the Trustee;

(iii) with respect to any Mortgage Loan other than a Cooperative Loan, the original recorded Mortgage with evidence of recording indicated thereon and the original recorded power of attorney, with evidence of recording thereon. If, in connection with any Mortgage Loan, the Depositor cannot deliver the Mortgage or power of attorney with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage or power of attorney has been lost, the Depositor shall deliver or cause to be delivered to the Trustee (or the applicable Custodian), in the case of a delay due to recording, a true copy of such Mortgage or power of attorney, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such Mortgage or power of attorney delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of such Mortgage or power of attorney has been forwarded to the public recording office, or, in the case of a Mortgage or power of attorney that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and a written Opinion of Counsel delivered to the Trustee and the Depositor that an original recorded Mortgage or power of attorney is not required to enforce the Trustee's interest in the Mortgage Loan;

©COPYRIGHT 2011 COPYRIGHT 2011
-All Rights Reserved-


(iv) the original of each assumption, modification or substitution agreement, if any, relating to the Mortgage Loans, or, as to any assumption, modification or substitution agreement which cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such assumption, modification or substitution agreement has been delivered for recordation, a photocopy of such assumption, modification or substitution agreement, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such assumption, modification or substitution agreement delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of such agreement has been forwarded to the public recording office;

(v) with respect to each Non-MERS Mortgage Loan, an original Assignment of Mortgage, in form and substance acceptable for recording. The related Mortgage shall be assigned either (A) in blank, without recourse or (B) to "U.S. Bank National Association, as Trustee of the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-3," without recourse;

(vi) if applicable, such original intervening assignments of the Mortgage, notice of transfer or equivalent instrument (each, an "Intervening Assignment"), as may be necessary to show a complete chain of assignment from the originator, or, in the case of an Intervening Assignment that has been lost, a written Opinion of Counsel delivered to the Trustee that such original Intervening Assignment is not required to enforce the Trustee's interest in the Mortgage Loans;

(vii) with respect to any Mortgage Loan other than a Cooperative Loan, the original mortgagee title insurance policy or attorney's opinion of title and abstract of title, and, if applicable, the original Primary Mortgage Insurance Policy or certificate;

(viii) the original of any security agreement, chattel mortgage or equivalent instrument executed in connection with the Mortgage or as to any security agreement, chattel mortgage or their equivalent instrument that cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such document has been delivered for recordation, a photocopy of such document, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such security agreement, chattel mortgage or their equivalent instrument delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of such document has been forwarded to the public recording office;

(ix) with respect to any manufactured housing contract, any related manufactured housing sales contract, installment loan agreement or participation interest; and

(x) with respect to any Cooperative Loan, the Cooperative Loan Documents.

The parties hereto acknowledge and agree that the form of endorsement attached hereto as Exhibit B-4 is intended to effect the transfer to the Trustee, for the benefit of the Certificateholders, of the Mortgage Notes and the Mortgages.

*COPYRIGHT 2011 COPYRIGHT 2011
-All Rights Reserved-



(c) (i) Assignments of Mortgage with respect to each Non-MERS Mortgage Loan other than a Cooperative Loan shall be recorded; *provided, however,* that such Assignments need not be recorded if, on or prior to the Closing Date, the Depositor delivers, at its own expense, an Opinion of Counsel addressed to the Trustee (which must be Independent counsel) acceptable to the Trustee and the Rating Agencies, to the effect that recording in such states is not required to protect the Trustee's interest in the related Non-MERS Mortgage Loans; *provided, further,* that notwithstanding the delivery of any Opinion of Counsel, the Master Servicer shall cause the applicable Servicer to submit each Assignment of Mortgage for recording upon the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage. Subject to the preceding sentence, as soon as practicable after the Closing Date (but in no event more than three months thereafter except to the extent delays are caused by the applicable recording office), the Master Servicer, at the expense of the Depositor and with the cooperation of the applicable Servicer, shall cause to be properly recorded by each Servicer in each public recording office where the related Mortgages are recorded each Assignment of Mortgage referred to in subsection (b)(v) above with respect to each Non-MERS Mortgage Loan. With respect to each Cooperative Loan, the Master Servicer, at the expense of the Depositor and with the cooperation of applicable Servicer, shall cause such Servicer to take such actions as are necessary under applicable law in order to perfect the interest of the Trustee in the related Mortgaged Property.

(ii) With respect to each MERS Mortgage Loan, the Master Servicer, at the expense of the Depositor and with the cooperation of the applicable Servicer, shall cause the Servicer to take such actions as are necessary to cause the Trustee to be clearly identified as the owner of each such Mortgage Loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS.

(d) In instances where a Title Insurance Policy is required to be delivered to the Trustee or the applicable Custodian on behalf of the Trustee under clause (b)(vii) above and is not so delivered, the Depositor will provide a copy of such Title Insurance Policy to the Trustee, or to the applicable Custodian on behalf of the Trustee, as promptly as practicable after the execution and delivery hereof, but in any case within 180 days of the Closing Date.

(e) For Mortgage Loans (if any) that have been prepaid in full after the Cut-off Date and prior to the Closing Date, the Depositor, in lieu of delivering the above documents, herewith delivers to the Trustee, or to the applicable Custodian on behalf of the Trustee, an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Collection Account pursuant to Section 4.01 have been so deposited. All original documents that are not delivered to the Trustee or the applicable Custodian on behalf of the Trustee shall be held by the Master Servicer or the applicable Servicer in trust for the benefit of the Trustee and the Certificateholders.

PSA:
http://www.sec.gov/Archives/edgar/data/1352797/000114420406010064/v037654_ex4-1.htm

*COPYRIGHT 2011 . COPYRIGHT 2011
•All Rights Reserved•



PRIME
LEGAL SERVICES, LLC

# SECURITIZATION STRUCTURE

THE CORRECT PROCESS OF SECURITIZATION
PARTY A
ORIGINATOR/LENDER
ALLIANCE BANCORP
PARTY B
SPONSOR
LEHMAN BROTHERS HOLDING INC
TRUE SALE
1) LEGAL OPINIONS
2) ASSET PURCHASE / SALE AGREEMENTS
3) DELIVERY & ACCEPTANCE RECEIPTS
4) COMPENSATION / MONEY
5) CAPACITY OF PARTIES TO BUY AND SELL
PARTY D
TRUST/ISSUING ENTITY
LEHMAN XS TRUST SERIES 2006-3
PARTY C
DEPOSITOR
STRUCTURED ASSET SECURITIES CORPORATION

HOW LENDERS "SIDE-STEPPED" THE PROCESS

PARTY A
ORIGINATOR/LENDER
ALLIANCE BANCORP
PARTY D
TRUST/ISSUING ENTITY
LEHMAN XS TRUST SERIES 2006-3

**PARTY B**
**SPONSOR**

**LEHMAN BROTHERS HOLDING INC**

**TRUE SALE**

1) LEGAL OPINIONS
2) ASSET PURCHASE / SALE AGREEMENTS
3) DELIVERY & ACCEPTANCE RECEIPTS
4) COMPENSATION / MONEY
5) CAPACITY OF PARTIES TO BUY AND SELL

**PARTY C**
**DEPOSITOR**

STRUCTURED ASSET SECURITIES CORPORATION

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



# SECTION 3: FORECLOSURE

**Chain of Title and Chain of Note**
**Recorded Events on the Loan Including Foreclosure Issues and Securitization**

| Recorded Chain of Deed Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original Deed of Trust** | **Date** | **Note Holder** |
| JANUARY 17, 2006<br>Instrument #<br>20060117-0003647<br>Official Records,<br>CLARK County<br>California | RICHARD EVALOBO & PRISCILLA SANTOS CORTEZ<br>(Borrowers)<br>ALLIANCE BANCORP<br>(Lender)<br>MIN 1000393-2005201573-7 | JANUARY 5, 2006 | ALLIANCE BANCORP<br>Lender<br>Principal Amount:<br>$ 405, 150.00<br>LOAN # 05-NC201573 |
| MARCH 16, 2011<br>Instrument #<br>201103160003568<br>Official Records,<br>CLARK County<br>California | **Notice of Default**<br>BOULDER CREEK II HOMOWNERS ASSOCIATION<br>SIGNED BY: NAOMI EDEN<br>DATE: FEBRUARY 18, 2011 | FEBRUARY 1, 2006 | LEHMAN XS TRUST SERIES 2006-3 |
| OCOTBER 19, 2011<br>Instrument #<br>201110190000136<br>Official Records,<br>CLARK County<br>California | **Notice of Trustee's Sale**<br>BOULDER CREEK II HOMEOWNERS ASSOCIATION<br>SIGNED BY: RYAN KERBOW, ATTORNEY<br>DATE: SEPTEMBER 29, 2011 | | |
| NOVEMBER 15, 2011<br>Instrument #<br>201111150002906<br>Official Records,<br>CLARK County<br>California | **Corporate Assignment of Deed of Trust**<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br>SIGNED BY: PAMELA J. PEDERSEN, VICE PRESIDENT<br>DATE: SEPTEMBER 8, 2011 | | |

*COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



PRIME
LEGAL SERVICES, LLC

## REPORT SUMMARY

**Deed of Trust:**

- On January 5, 2006, Debtors Richard Evalobo and Priscilla Santos Cortez, executed a negotiable promissory note and a security interest in the form of a Deed of Trust in the amount of $405,150.00. This document was filed as document number 20060117-0003647 in the Official Records Clark County, CA. The ***original lender of the promissory note is Alliance Bancorp. The original trustee under this Deed of Trust is Chicago Title Company.***

**Notice of Default:**

- On February 18, 2011, Document number 201103160003568 (Notice of Default and Election to Sell Under Deed of Trust) was filed in the Official Records, Clark County, CA. This Document properly identifies the amount of the mortgage loan that debtors obtained on January 5, 2006, recorded March 16, 2011.

**Notice of Trustee's Sale:**

- On September 29, 2011, a Notice of Trustee's Sale was filed as document number 201110190000136 in the Official Records, Clark County, CA. This Document properly identifies the amount of the mortgage loan that debtors obtained on January 5, 2006, recorded October 19, 2011.

**Corporate Assignment of Deed of Trust:**

- On **September 8, 2011,** a Corporate Assignment of Deed of Trust was filed as document number 201111150002906 in the Official Records, Clark County, CA. This Document properly identifies the amount of the mortgage loan that debtors obtained on January 5, 2006, recorded **November 15, 2011**.

***The Corporate Assignment of Deed of Trust was signed before the Notice of Trustee's Sale but it was recorded 2 months after it was signed. The Notice of Trustee's Sale was recorded in October and the Assignment was recorded in November.***

**Securitization:**

- The NOTE was sold, transferred and securitized into LEHMAN XS TRUST SERIES 2006-3 with a Closing Date of FEBRUARY 29, 2006.

**15-15D:**

- Certification and Notice of Termination of Registration under Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Report under Sections 13 and 15(d) of the Securities Exchange Act of 1934. Date: January 19, 2006 By: Beth Belfield, Officer. Trust was closed this day.

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



## LEGAL DESCRIPTION

Lot Eight (8) in Block A of BOULDER CREEK II, as shown by map thereof on file in Book 124 of Plats, Page 72, in the Office of the County Recorder of Clark County, Nevada.

"COPYRIGHT 2011 . COPYRIGHT 2011
•All Rights Reserved•



PRIME
LEGAL SERVICES, LLC

Inst #: 201103160003568
Fees: $14.00
N/C Fee: $0.00
03/16/2011 09:54:00 AM
Receipt #: 707886
Requestor:
ALESSI & KOENIG LLC (JUNES
Recorded By: GILKS Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

When recorded mail to:

**THE ALESSI & KOENIG, LLC**
**9500 West Flamingo Rd., Ste 100**
**Las Vegas, Nevada 89147**
**Phone: 702-222-4033**

A.P.N. 179-16-812-008 Trustee Sale No. 24236-1020

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER HOMEOWNERS ASSOCIATION LIEN**

WARNING! IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE! You may have the right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account. The sale may not be set until ninety days from the date this notice of default recorded, which appears on this notice. The amount due is **$1,924.21** as of **February 18, 2011** and will increase until your account becomes current. To arrange for payment to stop the foreclosure, contact: **Boulder Creek II Homeowners Association**, c/o Alessi & Koenig, 9500 W. Flamingo Rd, Ste 100, Las Vegas, NV 89147.

THIS NOTICE pursuant to that certain Assessment Lien, recorded on **December 13, 2010** as document number **1895**, of Official Records in the County of **Clark**, State of Nevada. Owner(s): **EVALOBO RICHARD & CORTEZ PRISCILLA SANTOS**, of **LOT 8 BLOCK A**, as per map recorded in Book **124**, Pages **72**, as shown on the Condominium Plan, Recorded on as document number **Pending** as shown on the Subdivision map recorded in Maps of the County of **Clark**, State of Nevada. PROPERTY ADDRESS: **1020 ZURICH AVE., HENDERSON, NV 89015**. If you have any questions, you should contact an attorney. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. REMEMBER YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT The Alessi & Koenig is appointed trustee agent under the above referenced lien, dated **December 13, 2010**, executed by **Boulder Creek II Homeowners Association** to secure assessment obligations in favor of said Association, pursuant to the terms contained in the Declaration of Covenants, Conditions, and Restrictions (CC&Rs). A default in the obligation for which said CC&Rs has occurred in that the payment(s) have not been made of homeowners assessments due from and all subsequent assessments, late charges, interest, collection and/or attorney fees and costs.

Dated: **February 18, 2011**

Naomi Eden, Alessi & Koenig, LLC on behalf of **Boulder Creek II Homeowners Association**

"COPYRIGHT 2011 COPYRIGHT 2011
-All Rights Reserved-



PRIME
LEGAL SERVICES, LLC

Inst #: 201110190000136
Fees: $14.00
N/C Fee: $0.00
10/19/2011 09:07:50 AM
Receipt #: 960532
Requestor:
JUNES LEGAL SERVICES
Recorded By: CDE Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

When recorded mail to:
Alessi & Koenig, LLC
9500 West Flamingo Rd., Suite 205
Las Vegas, NV 89147
Phone: 702-222-4033

APN: 179-16-812-008 TSN 24236-1020

## NOTICE OF TRUSTEE'S SALE

WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE. YOU MUST ACT BEFORE THE SALE DATE. IF YOU HAVE ANY QUESTIONS, PLEASE CALL Alessi & Koenig at 702-222-4033. IF YOU NEED ASSISTANCE, PLEASE CALL THE FORECLOSURE SECTION OF THE OMBUDSMAN'S OFFICE, NEVADA REAL ESTATE DIVISION, AT 1-877-829-9907 IMMEDIATELY.

NOTICE IS HEREBY GIVEN THAT:

On November 16, 2011, Alessi & Koenig as duly appointed Trustee pursuant to a certain lien, recorded on December 13, 2010, as instrument number 1805, of the official records of Clark County, Nevada, WILL SELL THE BELOW MENTIONED PROPERTY TO THE HIGHEST BIDDER FOR LAWFUL MONEY OF THE UNITED STATES, OR A CASHIERS CHECK at: 4:00 P.M. at 930 S. 4th Street, Las Vegas Nevada 89101.

The street address and other common designation, if any, of the real property described above is purported to be: 1020 ZURICH AVE., HENDERSON, NV 89015. The owner of the real property is purported to be: EVALOBO RICHARD & CORTEZ PRISCILLA SANTOS

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designations, if any, shown herein. Said sale will be made, without covenant or warranty, expressed or implied, regarding title, possession or encumbrances, to pay the remaining principal sum of a note, homeowner's assessment or other obligation secured by this lien, with interest and other sum as provided therein: plus advances, if any, under the terms thereof and interest on such advances, plus fees, charges, expenses, of the Trustee and trust created by said lien. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $2,304.02. Payment must be in cash, a cashier's check drawn on a state or national bank, a check drawn by a state bank or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.

Date: September 29, 2011

By: Ryan Kerbow, Attorney on behalf of Boulder Creek II Homeowners Association

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



PRIME
LEGAL SERVICES, LLC

Inst #: 201111150002906
Fees: $18.00
N/C Fee: $0.00
11/15/2011 12:13:31 PM
Receipt #: 978257
Requestor:
SERVICELINK IRVINE
Recorded By: OSA Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Assessor's/Tax ID No. 179-16-812-008 & 179-16-803-001

Recording Requested By:
AURORA BANK FSB SERVICELINK

When Recorded Return To:
ASSIGNMENT PREP
AURORA BANK FSB
P.O. Box 1706
Scottsbluff, NE 69363-1706

9847857

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

Clark, Nevada
REF #:0119243400 "EVALOBO"

MERS #: 100039320052015737 SIS #: 1-888-679-6377

THE UNDERSIGNED DOES HEREBY AFFIRM THAT THIS DOCUMENT SUBMITTED FOR RECORDING DOES NOT CONTAIN PERSONAL INFORMATION ABOUT ANY PERSON.

Date of Assignment: September 8th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ALLIANCE BANCORP, ITS SUCCESSORS AND/OR ASSIGNS at 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL 61834
Assignee: AURORA BANK FSB at 1000 N. WEST STREET, STE 200, WILMINGTON, DE 19801

Executed By: RICHARD EVALOBO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY AND PRISCILLA SANTOS CORTEZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ALLIANCE BANCORP
Date of Deed of Trust: 01/05/2006 Recorded: 01/17/2006 in Book: N/A Page: 0003647 as Instrument No.: 20060117 In the County of Clark, State of Nevada.

Assessor's/Tax ID No. 179-16-812-008 & 179-16-803-001

Property Address: 1020 ZURICH AVE, HENDERSON, NV 89015

For value received, the said Assignor hereby assigns and transfers to Assignee all its right, title and interest in and to said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

*RBR*RBRALSI*09/08/2011 01:14:18 PM* ALSI01ALSIA0000000000000000746482* NVCLARK* 0119243400 NVCLARK_ALSI_TRUST_ASSIGN_ASSN * *RBRALSI*

"COPYRIGHT 2011 COPYRIGHT 2011
-All Rights Reserved-



CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ALLIANCE BANCORP, ITS SUCCESSORS AND/OR ASSIGNS
On 09/08/11

By: Pamela J Pedersen
PAMELA J. PEDERSEN, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

On 9-8-11, before me, DEB SEIBERT, a Notary Public in and for Scotts Bluff in the State of Nebraska, personally appeared PAMELA J. PEDERSEN, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

GENERAL NOTARY - State of Nebraska
DEB SEIBERT
My Comm. Exp. March 23, 2015

Deb Seibert
DEB SEIBERT
Notary Expires: 03/23/2015

(This area for notarial seal)

Mail Tax Statements To: RICHARD EVALOBO, 1020 ZURICH AVE, HENDERSON, NV 89015

*COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



MERS:

- The DEED OF TRUST shows MIN 1000393-2005201573-7 and MERS SERVICER ID website https://www.mers-servicerid.org/sis indicates that AURORA BANK FSB is the Servicer.
- Although MERS records an assignment in the real property records, the promissory note which creates the legal obligation to repay the debt is not negotiated to MERS.
- MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or DEED OF TRUST sale.
- MERS is never the owner of the promissory note for which it seeks foreclosure.
- MERS has no legal or beneficial interest in the loan instrument underlying the security instrument for which it serves as "nominee"
- MERS has no legal or beneficial interest in the mortgage indebtedness underlying the security instrument for which it serves as "nominee".
- MERS has no interest at all in the promissory note evidencing the mortgage indebtedness.
- MERS is not a party to the alleged mortgage indebtedness underlying the security instrument for which it serves as "nominee".
- MERS has no financial or other interest in whether or not a mortgage loan is repaid.

<u>MERS PROVIDES THE NEW SERVICER AND INVESTOR</u>

Process Loans, Not Paperwork™

1 record matched your search:

Need help?

MIN: 1000393-2005201573-7 Note Date: 01/05/2006 MIN Status: Active

Servicer: Aurora Bank FSB
Scottsbluff, NE

Phone: (308) 220-2240

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

MERS BUSINEESS STATUS IS CURRENTLY ACTIVE

"COPYRIGHT 2011 ... COPYRIGHT 2011
-All Rights Reserved-

The creation of MERS changed the lending process. Instead of the lender being the Beneficiary on the DEED OF TRUST, MERS was now named as either the "Beneficiary" or the "Nominee for the Beneficiary" on the DEED OF TRUST. The concept was that with MERS assuming this role, there would be no need for Assignments of the DEED OF TRUST, since MERS would be given the "power of sale" through the DEED OF TRUST.

The naming of MERS as the Beneficiary meant that certain other procedures had to change. This was a result of the Note actually being made out to the lender, and not to MERS. Before explaining this change, it would be wise to explain the Securitization process.

As mentioned previously, Securitization and MERS required many changes in established practices. These practices were not and have not been codified, so they are major points of contention today.

One of the first issues to be addressed was how MERS might foreclose on a property. This was "solved" through an "unusual" practice.

- MERS has only 44 employees. They are all "overhead", administrative or legal personnel. How could they handle the load of foreclosures, Assignments, etc to be expected of a company with their duties and obligations? When a lender, Title Company, Foreclosure Company or other firm signed up to become a member of MERS, one or more of their people were designated as "Corporate Officers" of MERS and given the title of either Assistant Secretary or Vice President. These personnel were not employed by MERS, nor received income from MERS. They were been named "Officers" solely for the purpose of signing foreclosure and other legal documents in the name of MERS. (Apparently, there are some agreements which "authorize" these people to act in an Agency manner for MERS.)

This "solved" the issue of not having enough personnel to conduct necessary actions. It would be the Servicers, Trustees and Title Companies conducting the day-to-day operations needed for MERS to function.

As well, it was thought that this would provide MERS and their "Corporate Officers" with the "legal standing" to foreclose.

However, this brought up another issue that now needed addressing:

- When a Note is transferred, it must be endorsed and signed, in the manner of a person signing his paycheck over to another party. Customary procedure was to endorse it as "Pay to the Order of" and the name of the party taking the Note and then signed by the endorsing party. With a new party holding the Note, there would now need to be an Assignment of the Debt. This could not work if MERS was to be the foreclosing party.

The promissory note was made payable to ALLIANCE BANCORP. No record document suggests that it has been indorsed to MERS or any other named entity

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



Once a name is placed into the endorsement of the Note, then that person has the beneficial interest in the Note. Any attempt by MERS to foreclose in the MERS name would result in a challenge to the foreclosure since the Note was owned by "ABC" and MERS was the "Beneficiary". MERS would not have the legal standing to foreclose, since only the "person of interest" would have such authority. So, it was decided that the Note would be endorsed "in blank", which effectively made the Note a "Bearer Bond", and anyone holding the Note would have the "legal standing" to enforce the Note under Uniform Commercial Code. This would also suggest that Assignments would not be necessary.

MERS has recognized the Note Endorsement problem and on their website, stated that they could be the foreclosing party only if the Note was endorsed in blank. If it was endorsed to another party, then that party would be the foreclosing party.

The question now becomes as to whether a Note Endorsed in Blank and transferred to different entities as indicated previously does allow for foreclosure. If MERS is the foreclosing authority but has no entitlement to payment of the money, how could they foreclose? ***This is especially true if the true beneficiary is not known. Why raise the question of who the true beneficiary is? Again, from the MERS website........***

- "On MERS loans, MERS will show as the beneficiary of record. Foreclosures should be commenced in the name of MERS. To effectuate this process, MERS has allowed each servicer to choose a select number of its own employees to act as officers for MERS. Through this process, appropriate documents may be executed at the servicer's site on behalf of MERS by the same servicing employee that signs foreclosure documents for non-MERS loans. Until the time of sale, the foreclosure is handled in same manner as non-MERS foreclosures. At the time of sale, if the property reverts, the Trustee's MORTGAGE Upon Sale will follow a different procedure. Since MERS acts as nominee for the true beneficiary, it is important that the Trustee's MORTGAGE Upon Sale be made in the name of the true beneficiary and not MERS. ***Your title company or MERS officer can easily determine the true beneficiary.*** Title companies have indicated that they will insure subsequent title when these procedures are followed."

There, you have it. Direct from the MERS website. They admit that they name people to sign documents in the name of MERS. Often, these are Title Company employees or others that have no knowledge of the actual loan and whether it is in default or not.

Even worse, MERS admits that they are not the true beneficiary of the loan. In fact, it is likely that MERS has no knowledge of the true beneficiary of the loan for whom they are representing in an "Agency" relationship. They admit to this when they say "***Your title company or MERS officer can easily determine the true beneficiary.***

To further reinforce that MERS is not the true beneficiary of the loan, one need only look at the following Nevada Bankruptcy case, Hawkins, Case No. BK-S-07-13593-LBR (Bankr.Nev. 3/31/2009) (Bankr.Nev., 2009) – **"A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment . . . or to receive something as a result of a legal ar-**

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



**rangement or instrument." BLACK'S LAW DICTIONARY 165 (8th ed. 2004). But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans.**

In the case of MERS, the Note and the DEED OF TRUST are held by separate entities. This can pose a unique problem dependent upon the court. There are many court rulings based upon the following:

**"The DEED OF TRUST is a mere incident of the debt it secures and an assignment of the debt carries with it the security instrument. Therefore, a DEED OF TRUST is inseparable from the debt and always abides with the debt. It has no market or ascertainable value apart from the obligation it secures.**

**A DEED OF TRUST has no assignable quality independent of the debt, it may not be assigned or transferred apart from the debt, and an attempt to assign the DEED OF TRUST without a transfer of the debt is without effect. "**

This very "simple" statement poses major issues. *To easily understand, if the DEED OF TRUST and the Note are not together with the same entity, then there can be no enforcement of the Note. The DEED OF TRUST enforces the Note. It provides the capability for the lender to foreclose on a property. If the DEED OF TRUST is separate from the Note, then enforcement, i.e. foreclosure cannot occur.* The following ruling summarizes this nicely.

In ***Saxon vs Hillery, CA, Dec 2008, Contra Costa County Superior Court***, an action by Saxon to foreclose on a property by lawsuit was dismissed due to lack of legal standing. This was because the Note and the DEED OF TRUST were "owned" by separate entities. The Court ruled that when the Note and DEED OF TRUST were separated, the enforceability of the Note was negated until rejoined.

The Deed of Trust securing the note, while naming ALLIANCE BACORP. as "Lender,"

ALLIANCE BANCORP was a "correspondent lender" that originated Deed of Trust loans which in turn, was sold and transferred into a "federally-approved securitization" trust named LEHMAN XS TRUST SERIES 2006-3.

The Note and DEED OF TRUST have taken two distinctly different paths. The Note was securitized into LEHMAN XS TRUST SERIES 2006-3.

The written agreement that created LEHMAN XS TRUST SERIES 2006-3 is a "Pooling and Servicing Agreement" (PSA), and is a matter of public record, available on the website of the Securities Exchange Commission. The Trust is also described in a "Prospectus Supplement," also available on the SEC website. The Trust by its terms set a "CLOSING DATE" of ON OR ABOUT FEBRUARY 28, 2006. The promissory note in this case became trust property in compliance with

*COPYRIGHT 2011 ... COPYRIGHT 2011
-All Rights Reserved-



the requirement set forth in the PSA. The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the PSA are governed under the law.

*In view of the foregoing, all Assignment of DEED OF TRUST executed after the Trust's Closing Date would be a void act for the reason that it violated the express terms of the Trust instrument.*

The loan was originally made to ALLIANCE BANCORP and was sold and transferred to LEHMAN XS TRUST SERIES 2006-3 There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

In Carpenter v. Longan 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), ***the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."***

***In DEUTSCHE BANK NATIONAL TRUST COMPANY v- JACQUELINE BETHEA August 9, 2011 APPELLATE DIVISION stated "the plaintiff's attorney in all residential foreclosure actions to attach a "certification of diligent inquiry" to the complaint and an "affidavit of diligent inquiry" to the motion to enter judgment, both verifying that the plaintiff's attorney spoke directly to an employee of the client or loan servicer to ensure that the information provided in the documents is accurate. &4:64-1(a)(2); & 4:64-2(d). The Court's order of June 9, 2011, applied this requirement to all pending residential foreclosures where there has not been a sheriff's sale.***

***"'As a general proposition, a party seeking to foreclose a mortgage must own or control the underlying debt.'" Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011) (quoting Bank of N.Y. v. Raftogiantis, 418 N.J. Super. 323, 327-28 (Ch. Div. 2010». "In the absence of a showing of such ownership or control, the plaintiff lacks standing to proceed with the foreclosure action and the complaint must be dismissed."***

**An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. It is impossible to define security apart from its relationship to the promise or obligation it secures. The obligation and the security are commonly drafted as separate documents – typically a promissory note and a DEED OF TRUST. If the creditor transfers the note but not the DEED OF TRUST, the transferee receives a secured note; the security follows the note, legally if not physically. If the transferee is given the DEED OF TRSUT without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685)**

**"Where the DEED OF TRUST has "transferred" only the DEED OF TRUST, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation,**

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



PRIME
LEGAL SERVICES, LLC

**has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000)**

By statute, assignment of the DEED OF TRUST carries with it the assignment of the debt. . . Indeed, in the event that a deed of trust loan somehow separates interests of the note and the DEED OF TRUST, with the DEED OF TRUST lying with some independent entity, the mortgage may become unenforceable. *The practical effect of splitting the DEED OF TRUST from the promissory note is to make it impossible for the holder of the note to foreclose*, unless the holder of the DEED OF TRUST is the agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the DEED OF TRUST will never experience default because only the holder of the note is entitled to payment of the underlying obligation. *The deed of trust loan becomes ineffectual when the note holder did not also hold the DEED OF TRUST*."

This report was based exclusively on the documentation provided. It also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings.

The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.

Sincerely,

Kristen Bronowich

**Certified Mortgage Securitization Auditor**

**PRIME LEGAL SERVICE, LLC**
1135 CLIFTON AVENUE, Suite 203
CLIFTON NEW JERSEY 07013
973-471-3381

"COPYRIGHT 2011 . COPYRIGHT 2011
-All Rights Reserved-



Comparables

Map



Customer Name : Jesse Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved



# Property Detail

Subject Property : 1020 Zurich Ave Henderson NV 89015

## Owner Information

Owner Name : Cortez Priscilla S

Mailing Address : 1020 Zurich Ave, Henderson NV 89015-3518 C072

Vesting Codes : Married Woman / / Separate Property

Owner Occupied Indicator : O

## Location Information

Legal Description : Boulder Creek 2 Plat Book 124 Page 72 Lot 8 Block A Pt S2 Se4 Sec 16 Twp 22 Rgn 63

County : Clark, Nv

APN : 179-16-812-008

Census Tract / Block : 54.31 / 4

Subdivision : Boulder Creek 02

Township-Range-Sect : 22-63-16

Map Reference : 179-016 / 179-016

Legal Book/Page : 124-72

School District : Clark County

Legal Lot : 8

Munic/Township : Henderson

Legal Block : A

## Owner Transfer Information

Recording/Sale Date : 08/01/2011 / 07/29/2011

Deed Type : Quit Claim Deed

Document # : 110801001825

## Last Market Sale Information

Recording/Sale Date : 01/17/2006 / 01/10/2006

1st Mtg Int. Rate/Type : 7% / Adjustable Int Rate Loan

Sale Price : $506,440

1st Mtg Document # : 60117003647

Document # : 60117003644

1st Mtg Term : 30

Deed Type : Bargain & Sale Deed

2nd Mtg Amount/Type : $50,600 / Conv

1st Mtg Amount/Type : $405,150 / Cnv

Title Company : Chicago Title Co.

Lender : Alliance Bancorp

Seller Name : Woodside Preserve Of Boulder Cree

Customer Name : Jesse Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved



# Property Detail

## Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Gross Area : | 4,179 | # of Stories : | 2 | Porch Type : | Patio/porch |
| Living Area : | 3,501 | Parking Type : | Built-In | Patio Type : | Concrete Block Patio |
| Above Grade : | 3501 | Garage Area : | 678 | Air Cond : | Central |
| Total Rooms : | 10 | Roof Material : | Concrete Tile | Quality : | Average |
| Bedrooms : | 5 | Heat Type : | Forced Air | Bath Fixtures : | 16 |
| Bath(F/H) : | 3 | Cooling Type : | Forced Air | Floor Cover : | Carpet |
| Fireplace : | Y / 1 | Exterior wall : | Frame/stucco | Other Rooms : | Dining Room, Family Room |
| Year Built / Eff : | 2005 / 2005 | | | | |

## Property Information

| | | | | | |
|---|---|---|---|---|---|
| Land Use : | Sfr | Zoning : | RS-4 | Lot Size : | 11,326 |
| County Use : | Resid-single Family | Lot Acres : | 0.26 | | |

## Tax Information

| | | | | | |
|---|---|---|---|---|---|
| Total Value : | $249,171 | Assessed Year : | 2011 | Property Tax : | $2,821.09 |
| Land Value : | $35,000 | Improve % : | 86% | Tax Rate Area : | 505 |
| Improvement Value : | $214,171 | Tax Year : | 2010 | Market Value : | $249,171 |
| Total Taxable Value : | $249,171 | | | | |

Customer Name : Jesse Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved



# Comparables

## Sales Analysis

| Criteria | Subject Property | Low | High | Average |
|---|---|---|---|---|
| Sale Price | $506,440 | $195,000 | $405,000 | $252,310 |
| Bldg/Living Area | 3501 | 2996 | 3668 | 3441 |
| Price Per Square Foot | | $48 | $90 | $61.79 |
| Year Built | 2005 | 2002 | 2008 | 2005 |
| Lot Size | 11,326 | 6,098 | 33,541 | 9,126 |
| Bedrooms | 5 | 3 | 6 | 5 |
| Bathrooms | 3 | 3 | 4 | 4 |
| Stories | 2 | 2 | 2 | 2 |
| Total Assessed Value | $249,171 | $207,746 | $391,111 | $245,990 |
| Distance From Subject | 0 | 0.09 | 0.79 | 0.40 |

## Summary of Comparables

| # | Address | Sale Price | Total Assessed Value | Sale Date | Bed | Bath | Living Area | Lot Size | Year Built | Dist (Miles) | Zoning |
|---|---|---|---|---|---|---|---|---|---|---|---|
| S | 1020 Zurich Ave | 506,440 | 249,171 | 01/17/2006 | 5 | 3 | 3,501 | 11,326 | 2005 | | RS-4 |
| 1 | 1025 Warsaw Ave | 260,000 | 249,171 | 06/10/2011 | 5 | 3 | 3,501 | 10,019 | 2005 | 0.09 | RS-4 |
| 2 | 1029 Warsaw Ave | 283,000 | 263,580 | 11/30/2010 | 4 | 3 | 3,101 | 10,019 | 2005 | 0.09 | RS-4 |
| 3 | 1041 Warsaw Ave | 269,900 | 249,171 | 02/01/2011 | 5 | 3 | 3,501 | 10,019 | 2005 | 0.12 | RS-4 |
| 4 | 1048 Bonny Lake Ct | 270,000 | 283,991 | 02/22/2011 | 5 | 3 | 3,501 | 12,197 | 2006 | 0.12 | RS-4 |
| 5 | 1109 Silvery Shadows Ave | 295,000 | 287,468 | 05/31/2011 | 5 | 4 | 3,668 | 9,583 | 2006 | 0.19 | RS-4 |
| 6 | 1117 Silvery Shadows Ave | 227,800 | 239,643 | 08/18/2011 | 6 | 4 | 3,668 | 6,098 | 2007 | 0.22 | RS-4 |
| 7 | 1124 Silvery Shadows Ave | 240,000 | 247,200 | 06/27/2011 | 6 | 4 | 3,668 | 6,534 | 2008 | 0.23 | RS-4 |
| 8 | 333 Shimmering Moon St | 245,000 | 238,351 | 06/24/2011 | 6 | 4 | 3,668 | 6,098 | 2006 | 0.24 | RS-4 |
| 9 | 1132 Silvery Shadows Ave | 250,000 | 246,063 | 10/11/2011 | 6 | 4 | 3,668 | 6,534 | 2008 | 0.26 | RS-4 |
| 10 | 340 S Milan St | 241,000 | 240,103 | 04/28/2011 | 5 | 4 | 3,668 | 6,098 | 2006 | 0.26 | RS-4 |

Customer Name : Jesse Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved



# Assessor Map

Customer Name : Jesse Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved



# Transaction History

## Sales History

| | | | | |
|---|---|---|---|---|
| Rec. Date : | 08/01/2011 | 12/30/2008 | 01/17/2006 | 01/17/2006 |
| Sale Date : | 07/29/2011 | 11/17/2008 | 01/06/2006 | 01/06/2006 |
| Sale Price : | | | | |
| Rec.Doc.No : | 110801001825 | 81230002923 | 60117003646 | 60117003645 |
| Doc. Type : | Quit Claim Deed | Quit Claim Deed | Bargain & Sale Deed | Bargain & Sale Deed |
| Sale Price Type : | | | | |
| Multi/Split Sale : | | | | |
| Buyer : | Cortez Priscilla S | Boulder Creek Ii Hoa | Evalobo Richard | Cortez Priscilla S |
| Seller : | Evalobo Richard | Woodside Preserve Of Boulder Cree | Evalobo Darlyn | Cortez Juanito |
| Title Company : | | Chicago Title Co. | Chicago Title Co. | Chicago Title Co. |
| Other Doc No. : | | | | |

| | |
|---|---|
| Rec. Date : | 01/17/2006 |
| Sale Date : | 01/10/2006 |
| Sale Price : | $506,440 |
| Rec.Doc.No : | 60117003644 |
| Doc. Type : | Bargain & Sale Deed |
| Sale Price Type : | |
| Multi/Split Sale : | |
| Buyer : | Evalobo Richard |
| Seller : | Woodside Preserve Of Boulder Cree |
| Title Company : | Chicago Title Co. |
| Other Doc No. : | |

Note: Refer to the property reports recorded documents.

Customer Name : Jesse Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved



# Transaction History

## Mortgage History

### 1st Mortgage Details

| | |
|---|---|
| Mtg. Date : | 01/17/2006 |
| Mtg. Amt. : | $405,150 |
| Doc. Type : | |
| Loan Type : | Conventional |
| Mtg. Rate Type : | Adjustable Int Rate Loan |
| Mtg. Term : | 30 Years |
| Mtg. Rate : | 7.25 |
| Lender : | Alliance Bancorp |
| Borrower 1 : | Evalobo Richard |
| Borrower Vesting : | |
| Borrower 2 : | Cortez Priscilla S |
| Borrower 3 : | |
| Borrower 4 : | |

### 2nd Mortgage Details

| | |
|---|---|
| 2nd Mtg. Date : | 01/17/2006 |
| 2nd Mtg. Amt. : | $50,600 |
| Doc. Type : | |
| Loan Type : | CONVENTIONAL |
| 2nd Mtg. Rate Type : | FIXED RATE LOAN |
| 2nd Mtg. Term : | 30 Years |
| 2nd Mtg. Rate : | |
| Lender : | Alliance Bancorp |
| Borrower 1 : | Evalobo Richard |
| Borrower Vesting : | |
| Borrower 2 : | Cortez Priscilla S |
| Borrower 3 : | |
| Borrower 4 : | |

Customer Name : Jesse Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved

Note: Refer to the property reports recorded documents.



# Transaction History

## Foreclosure History

| | | |
|---|---|---|
| Doc Type : | Notice Of Trustee's Sale | Notice Of Default |
| Recording Date : | 10/19/2011 | 03/16/2011 |
| Orig Mtg Amt : | | |
| Orig Doc Date : | 12/13/2010 | 12/13/2010 |
| Lender Name : | No Lender On Document | Private Individual |

Customer Name : Jesse Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved

Note: Refer to the property reports recorded documents.



# Neighbors

**1024 ZURICH AVE** Distance **0.02 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | **Garbiso Robert D** | Subdivision : | **Boulder Creek 02** |
| Sale Date : | **06/09/2008** | Recording Date : | **06/23/2008** |
| Total Value : | **$248,960** | Sale Price : | **$402,500** |
| Bed / Bath : | **5 / 3** | Property Tax : | **$2,818.89** |
| Land Use : | **Sfr** | Lot Acres : | **0.23** |
| Stories : | **2** | Living Area : | **3,501** |
| Yr Blt / Eff Yr Blt : | **2005 / 2005** | APN : | **179-16-812-007** |

**1021 BONNY LAKE CT** Distance **0.03 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | **Hillstead Cameron G** | Subdivision : | **Boulder Creek 02** |
| Sale Date : | **06/09/2006** | Recording Date : | **06/14/2006** |
| Total Value : | **$212,629** | Sale Price : | **$442,795** |
| Bed / Bath : | **3 / 2** | Property Tax : | **$2,420.34** |
| Land Use : | **Sfr** | Lot Acres : | **0.29** |
| Stories : | **1** | Living Area : | **2,427** |
| Yr Blt / Eff Yr Blt : | **2006 / 2006** | APN : | **179-16-812-009** |

**1028 ZURICH AVE** Distance **0.03 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | **Rhude John & Bonnie Rev Living** | Subdivision : | **Boulder Creek 02** |
| Sale Date : | **12/20/2005** | Recording Date : | **12/22/2005** |
| Total Value : | **$251,283** | Sale Price : | **$481,121** |
| Bed / Bath : | **5 / 3** | Property Tax : | **$2,842.19** |
| Land Use : | **Sfr** | Lot Acres : | **0.23** |
| Stories : | **2** | Living Area : | **3,501** |
| Yr Blt / Eff Yr Blt : | **2005 / 2005** | APN : | **179-16-812-006** |

Customer Name : Jessa Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved



# Neighbors

**1025 BONNY LAKE CT** Distance **0.03 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | **Haze Ronald J Ii** | Subdivision : | **Boulder Creek 02** |
| Sale Date : | **06/16/2006** | Recording Date : | **06/21/2006** |
| Total Value : | **$279,654** | Sale Price : | **$546,341** |
| Bed / Bath : | **4 / 3** | Property Tax : | **$2,761.98** |
| Land Use : | **Sfr** | Lot Acres : | **0.26** |
| Stories : | **2** | Living Area : | **3,101** |
| Yr Blt / Eff Yr Blt : | **2006 / 2006** | APN : | **179-16-812-010** |

**1024 NEW CREEK AVE** Distance **0.04 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | **Angwin Andrea L** | Subdivision : | **Lake Valley Estate** |
| Sale Date : | **12/11/2003** | Recording Date : | **12/18/2003** |
| Total Value : | **$154,320** | Sale Price : | **$215,600** |
| Bed / Bath : | **2 / 2** | Property Tax : | **$1,616.60** |
| Land Use : | **Sfr** | Lot Acres : | **0.16** |
| Stories : | **1** | Living Area : | **1,678** |
| Yr Blt / Eff Yr Blt : | **2004 / 2004** | APN : | **179-16-810-018** |

**1020 NEW CREEK AVE** Distance **0.04 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | **Bedirian Siranoush** | Subdivision : | **Lake Valley Estate** |
| Sale Date : | **12/22/2003** | Recording Date : | **12/30/2003** |
| Total Value : | **$178,154** | Sale Price : | **$264,724** |
| Bed / Bath : | **3 / 2** | Property Tax : | **$1,858.25** |
| Land Use : | **Sfr** | Lot Acres : | **0.16** |
| Stories : | **1** | Living Area : | **2,161** |
| Yr Blt / Eff Yr Blt : | **2004 / 2004** | APN : | **179-16-810-019** |

2011 CoreLogic. All rights reserved



Neighbors

**1028 NEW CREEK AVE** — Distance **0.04 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | Santana Salvador | Subdivision : | Lake Valley Estate |
| Owner Phone : | (702) 558-9431 | Recording Date : | 12/16/2003 |
| Sale Date : | 12/09/2003 | Sale Price : | $239,175 |
| Total Value : | $171,394 | Property Tax : | $1,793.38 |
| Bed / Bath : | 3 / 2 | Lot Acres : | 0.16 |
| Land Use : | Sfr | Living Area : | 2,161 |
| Stories : | 1 | APN : | 179-16-810-017 |
| Yr Blt / Eff Yr Blt : | 2004 / 2004 | | |

**1029 BONNY LAKE CT** — Distance **0.04 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | Alford Family Living Trust | Subdivision : | Boulder Creek 02 |
| Sale Date : | 06/09/2006 | Recording Date : | 06/20/2006 |
| Total Value : | $235,566 | Sale Price : | $490,057 |
| Bed / Bath : | 4 / 3 | Property Tax : | $2,606.30 |
| Land Use : | Sfr | Lot Acres : | 0.26 |
| Stories : | 2 | Living Area : | 3,101 |
| Yr Blt / Eff Yr Blt : | 2006 / 2006 | APN : | 179-16-812-011 |

**1016 NEW CREEK AVE** — Distance **0.04 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | Smith Linda A | Subdivision : | Lake Valley Estate |
| Sale Date : | 12/22/2003 | Recording Date : | 12/23/2003 |
| Total Value : | $173,843 | Sale Price : | $231,045 |
| Bed / Bath : | 2 / 2 | Property Tax : | $1,816.62 |
| Land Use : | Sfr | Lot Acres : | 0.16 |
| Stories : | 1 | Living Area : | 1,578 |
| Yr Blt / Eff Yr Blt : | 2004 / 2004 | APN : | 179-16-810-020 |

2011 CoreLogic. All rights reserved



Neighbors

**1032 ZURICH AVE** Distance **0.04 Miles**

| | | | |
|---|---|---|---|
| Owner Name : | Glass Lusvlminda | Subdivision : | Boulder Creek 02 |
| Sale Date : | 12/15/2005 | Recording Date : | 12/29/2005 |
| Total Value : | $230,726 | Sale Price : | $523,844 |
| Bed / Bath : | 4 / 3 | Property Tax : | $2,616.21 |
| Land Use : | Sfr | Lot Acres : | 0.23 |
| Stories : | 2 | Living Area : | 3,101 |
| Yr Blt / Eff Yr Blt : | 2005 / 2005 | APN : | 179-16-812-005 |

Customer Name : Jesse Aquiningoc
Customer Company Name : American Coast Title
Prepared On : 11/09/2011
2011 CoreLogic. All rights reserved

Inst #: 201111150002906
Fees: $18.00
N/C Fee: $0.00
11/15/2011 12:13:31 PM
Receipt #: 978257
Requestor:
SERVICELINK IRVINE
Recorded By: OSA Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Assessor's/Tax ID No. 179-16-812-008 & 179-16-803-001

Recording Requested By:
AURORA BANK FSB

When Recorded Return To:
ASSIGNMENT PREP
AURORA BANK FSB
P.O. Box 1706
Scottsbluff, NE 69363-1706

9847?7

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Clark, Nevada
REF #:0119243400 "EVALOBO"

MERS #: 100039320052015737 SIS #: 1-888-679-6377

THE UNDERSIGNED DOES HEREBY AFFIRM THAT THIS DOCUMENT SUBMITTED FOR RECORDING DOES NOT CONTAIN PERSONAL INFORMATION ABOUT ANY PERSON.

Date of Assignment: September 8th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ALLIANCE BANCORP, ITS SUCCESSORS AND/OR ASSIGNS at 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL 61834
Assignee: AURORA BANK FSB at 1000 N. WEST STREET, STE 200, WILMINGTON, DE 19801

Executed By: RICHARD EVALOBO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY AND PRISCILLA SANTOS CORTEZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ALLIANCE BANCORP
Date of Deed of Trust: 01/05/2006 Recorded: 01/17/2006 in Book: N/A Page: 0003647 as Instrument No.: 20060117 In the County of Clark, State of Nevada.

Assessor's/Tax ID No. 179-16-812-008 & 179-16-803-001

Property Address: 1020 ZURICH AVE, HENDERSON, NV 89015

For value received, the said Assignor hereby assigns and transfers to Assignee all its right, title and interest in and to said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

*RBR*RBRALSI*09/08/2011 01:14:18 PM* ALSI01ALSIA0000000000000000745482* NVCLARK* 0119243400 NVCLARK_ALSI_TRUST_ASSIGN_ASSN * *RBRALSI*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ALLIANCE BANCORP, ITS SUCCESSORS AND/OR ASSIGNS
On 09/08/11

By: [signature]
PAMELA J. PEDERSEN, Vice-President

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. CORPORATE SEAL 1999 DELAWARE

STATE OF Nebraska
COUNTY OF Scotts Bluff

On 9-8-11, before me, DEB SEIBERT, a Notary Public in and for Scotts Bluff in the State of Nebraska, personally appeared PAMELA J. PEDERSEN, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

[signature]
DEB SEIBERT
Notary Expires: 03/23/2015

GENERAL NOTARY - State of Nebraska
DEB SEIBERT
My Comm. Exp. March 23, 2015

(This area for notarial seal)

Mail Tax Statements To: RICHARD EVALOBO, 1020 ZURICH AVE, HENDERSON, NV 89015

*RBR*RBRALSI*09/08/2011 01:14:18 PM* ALSI01ALSIA0000000000000007454B2* NVCLARK* 0119243400 NVCLARK_ALSI_TRUST_ASSIGN_ASSN * *RBRALSI*

Inst #: 201212040002280
Fees: $18.00
N/C Fee: $0.00
12/04/2012 12:54:37 PM
Receipt #: 1406285
Requestor:
SERVICELINK IRVINE
Recorded By: DXI Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN No.: 179-16-812-008
Recording requested by:

SERVICELINK

When recorded mail to:

Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067

Space above this line for recorders use

TS No.: NV-11-474296-CL
Order No.: 984737
MERS MIN No.: 100039320052015737 MERS Telephone No. 1-888-679-6377

It is hereby affirmed that this document submitted for recording does not contain the social security number of any person or persons. (Per NRS 239B.030).

# Assignment of Deed of Trust

For value received, the undersigned hereby grants, assigns, and transfers to

**Nationstar Mortgage LLC**

All beneficial interest and all rights accrued or to accrue under that certain Deed of Trust dated **1/5/2006** executed by **RICHARD EVALOBO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY AND PRISCILLA SANTOS CORTEZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor(s) to **CHICAGO TITLE COMPANY**, as Trustee and recorded as Instrument No. **20060117-0003647**, on **1/17/2006**, of Official Records in the office of the County Recorder of **CLARK** County, **NV**, that secures the underlying promissory note.

TS No.: NV-11-474296-CL
Page 2

Dated: 11/27/12

Aurora Bank FSB by Nationstar Mortgage LLC
as attorney in fact

By: ______________________ 11/27/12
Clint Vail
Assistant Secretary

State of: Texas )
) ss
County of: Denton )

On 11-27-12 before me, Christopher Dunn the undersigned Notary Public, personally appeared Clint Vail personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature ______________________ 11-27-12 (Seal)
Christopher Dunn

CHRISTOPHER DUNN
Notary Public, State of Texas
My Commission Expires
December 15, 2015

Inst #: 201212200004110
Fees: $18.00
N/C Fee: $0.00
12/20/2012 02:14:20 PM
Receipt #: 1429789
Requestor:
SERVICELINK IRVINE
Recorded By: RNS Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN No.: 179-16-812-008
Recording requested by: SERVICELINK

When recorded mail to.
Quality Loan Service Corporation
2141 5th Avenue
San Diego, CA 92101
619-645-7711

Space above this line for recorders use only

TS No.: **NV-11-474296-CL**
Order No.:**984737**
**MERS MIN No.: 100039320052015737 MERS**
**Telephone No. 1-888-679-6377**

## Substitution of Trustee

WHEREAS, **RICHARD EVALOBO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY AND PRISCILLA SANTOS CORTEZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** was the original Trustor, **CHICAGO TITLE COMPANY** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ALLIANCE BANCORP** was the original Beneficiary under that certain Deed of Trust dated **1/5/2006** and recorded on **1/17/2006** as Instrument No. **20060117-0003647**, of Official Records of **CLARK** County, **NV**; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes **QUALITY LOAN SERVICE CORPORATION** , as Trustee under said Deed of Trust.

TS No.: NV-11-474296-CL
Page 2

Date: DEC 18 2012

Nationstar Mortgage LLC by Quality Loan Service Corporation as its attorney in fact

[signature]

By: **Stephanie Fuentes, Assistant Secretary**

State of: ***California*** )
) ss.
County of: ***San Diego*** )

On DEC 18 2012 before me, CHARISSA MARIE DOREEN OLIVAS a notary public, personally appeared **Stephanie Fuentes**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ***California*** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. (Seal)

[signature]

Charissa Marie Doreen Olivas
COMM. #1997708
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
NOVEMBER 10, 2016

Inst #: 20141217-0000019
Fees: $223.00
N/C Fee: $0.00
12/17/2014 08:00:17 AM
Receipt #: 2254076
Requestor:
LSI TITLE AGENCY INC.
Recorded By: SOL Pgs: 7
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN No.(s): 179-16-812-008
Recording requested by:

When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101
619-645-7711

Space above this line for recorders use only

TS No.: NV-11-474296-CL
Order No.: 984737
Property Address: 1020 ZURICH AVE, HENDERSON, NV 89015

It is hereby affirmed that this document submitted for recording does not contain the social security number of any person or persons. (Per NRS 239B.030).

# Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust

NOTICE IS HEREBY GIVEN: That **Quality Loan Service Corporation** is either the original trustee or the duly appointed substituted trustee under a Deed of Trust dated **1/5/2006**, executed by RICHARD EVALOBO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY AND PRISCILLA SANTOS CORTEZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ALLIANCE BANCORP**, as beneficiary, recorded **1/17/2006**, as Instrument No. **20060117-0003647**, of Official Records in the Office of the Recorder of **CLARK** County, Nevada securing, among other obligations including 1 NOTE(S) FOR THE ORIGINAL sum of **$405,150.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The installments of principal and interest which became due on 5/1/2011, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. This amount owed will increase until your account becomes current. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.**

The present Beneficiary under such Deed of Trust has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

TS No.: NV-11-474296-CL
Notice of Default

## NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred. As to owner occupied property, where reinstatement is possible, the time to reinstate may be extended to 5 days before the date of sale pursuant to NRS 107.080. The Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and sale.

**For information relating to the foreclosure status of the property and/or to determine if a reinstatement is possible and the amount, if any, to cure the default, please contact:**

**Nationstar Mortgage LLC**
**c/o Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**
**619-645-7711**

**To reach a Loss Mitigation Representative who is authorized to negotiate a loan modification, please contact:**

**Nationstar Mortgage LLC**
**Contact:**          **Loss Mitigation Team**
**Department:**    **Loss Mitigation Department**
**Phone:**          **888-480-2432**
**Toll Free:**       **888-480-2432**

You may wish to consult a credit-counseling agency to assist you. The following are two local counseling agencies approved by the Department of Housing and Urban Development (HUD): Nevada Legal Services, Inc., 877-693-2163, http://www.nlslaw.net; and Southern Nevada Regional Housing Authority, 702-922-6900, http://www.snvrha.org. HUD can provide you with the names and addresses of additional local counseling agencies if you call HUD's toll-free telephone number: 800-569-4287. Additional information may also be found on HUD's website: http://portal.hud.gov/portal/page/portal/HUD/localoffices.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

TS No.: NV-11-474296-CL
Notice of Default

Dated: DEC 12 2014

**Quality Loan Service Corporation, as Trustee**

By: **Stephanie Fuentes, Assistant Secretary**

State of: **California**)

) ss.

County of: **San Diego**)

On DEC 12 2014 before me, Ashley Maxwell a notary public, personally appeared Stephanie Fuentes, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of ***California*** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. (Seal)

Ashley Maxwell

OFFICIAL SEAL
ASHLEY MAXWELL
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 2065217
SAN DIEGO COUNTY
MY COMM. EXP. MAY 18, 2018

**NEVADA DECLARATION OF COMPLIANCE**
**NV SB 321 (2013) Sec. 11**

Borrower(s): RICHARD EVALOBO & PRISCILLA SANTOS CORTEZ
Property Address: 1020 ZURICH AVE HENDERSON, NV 89015
Trustee Sale Number:

I am employed as an Assistant Secretary by Nationstar Mortgage LLC ("Nationstar"), the servicer for the mortgage loan.

I personally reviewed the business records of Nationstar and determined that:

[ ] Nationstar contacted the borrower(s) as required by SB 321 (2013) Sec. 11(2).

[ X ] Nationstar attempted to contact the borrower(s) as required by SB 321 (2013) Sec. 11(5).

[ ] The requirements of SB 321 (2013) Sec. 11 do not apply because the individual(s) is not a Borrower and no contact was required.

I declare that the foregoing statement is true to the best of my knowledge and belief.

As all pre-foreclosures notices required by NRS 107.080(2)(c)(3) and SB 321 (2013) Sec. 10(1) were timely sent per statute, the mortgage servicer authorizes the trustee to submit the attached Notice of Default to be recorded and to exercise the power of sale.

**Nationstar Mortgage LLC**

Dated: 6/3/14

C Smith 6/3/14
Signature of Employee

Cornel Smith – Assistant Secretary
Printed Name of Employee

Ver 06.01.2013

# AFFIDAVIT OF AUTHORITY TO EXERCISE THE POWER OF SALE

| Borrower(s):<br>RICHARD EVALOBO,<br>PRISCILLA SANTOS CORTEZ<br>1020 ZURICH AVE<br>HENDERSON, NV 89015 | | Trustee Name and Address:<br>Quality Loan Service Corp.<br>2141 5th Avenue<br>San Diego, CA 92101 |
|---|---|---|
| Property Address:<br>1020 ZURICH AVE<br>HENDERSON, NV 89015 | | Deed of Trust Document<br>Instrument No. 20060117-0003647 |

STATE OF Texas )
) ss:
COUNTY OF Denton )

The affiant, Jesslyn Williams, being first duly sworn upon oath and under penalty of perjury, attests as follows:

1. I am an employee of Nationstar Mortgage LLC. I am duly authorized to make this Affidavit for Nationstar Mortgage LLC in its capacity as the current beneficiary of the subject Deed of Trust ("Beneficiary") or the Servicer for the current beneficiary of the Deed of Trust.

2. I have the personal knowledge required to execute this Affidavit, as set forth in NRS 107.080(2)(c) and can confirm the accuracy of the information set forth herein. If sworn as a witness, I could competently testify to the facts contained herein.

3. In the regular and ordinary course of business, it is Nationstar Mortgage LLC's practice to make, collect, and maintain business records and documents related to any loan it originates, funds, purchases and/or services, including the Subject Loan (collectively, "Business Records"). I have continuing access to the Business Records for the Subject Loan, and I am familiar with the Business Records and I have personally reviewed the business records relied upon to compile this Affidavit.

4. The full name and business address of the current trustee or the current trustee's representative or assignee is:

| Quality Loan Service Corp. | | 2141 5th Avenue<br>San Diego, CA 92101 |
|---|---|---|
| Full Name | | Street, City, State, Zip |

5. The full name and business address of the current holder of the note secured by the Deed of Trust is:

| Nationstar Mortgage LLC | | 350 Highland Drive, Lewisville, TX, 75067 |
|---|---|---|
| Full Name | | Street, City, State, Zip |

6. The full name and business address of the current beneficiary of record of the Deed of Trust is:

| Nationstar Mortgage LLC | | 350 Highland Drive, Lewisville, TX, 75067 |
|---|---|---|
| Full Name | | Street, City, State, Zip |

7. The full name and business address of the current servicer of the obligation or debt secured by the Deed of Trust is:

| Nationstar Mortgage LLC | | 350 Highland Drive, Lewisville, TX, 75067 |
|---|---|---|
| Full Name | | Street, City, State, Zip |

8. The beneficiary, its successor in interest, or the trustee of the Deed of Trust has: (I) actual or constructive possession of the note secured by the Deed of Trust; and/or (II) is entitled to enforce the obligation or debt secured by the Deed of Trust. If the latter is applicable and the obligation or debt is an "instrument," as defined in NRS § 104.3103(2), the beneficiary, successor in interest to the beneficiary, or trustee entitled to enforce the obligation or debt is either: (1) the holder of the instrument constituting the obligation or debt; (2) a nonholder in possession of the instrument who has the rights of the holder; or (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to a court order issued NRS § 104.3309.

9. The beneficiary, its successor in interest, the trustee, the servicer of the obligation or debt secured by the Deed of Trust, or an attorney representing any of those persons, has sent to the obligor or borrower of the of the obligation or debt secured by the Deed of Trust a written statement containing the following information (I) the amount of payment required to make good the deficiency in performance or payment, avoid the exercise of the power of sale and reinstate the underlying obligation or debt, as of the date of the statement; (II) The amount in default; (III) the principal amount of the obligation or debt secured by the Deed of Trust; (IV) the amount of accrued interest and late charges; (V) a good faith estimate of all fees imposed in connection with the exercise of the power of sale; (VI) contact information for obtaining the most current amounts due and a local or toll free

telephone number where the obligor or borrower of the obligation or debt may call to receive the most current amounts due and a recitation of the information contained in this Affidavit.

10. The borrower or obligor may utilize the following toll-free or local telephone number to inquire about the default, obtain the most current amounts due, receive a recitation of the information contained in this Affidavit, and/or explore loss mitigation alternatives: 888-480-2432.

11. Pursuant to my personal review of the business records of the beneficiary, the successor in interest of the beneficiary, and/or the business records of the servicer of the obligation or debt secured by the Deed of Trust; and/or the records of the county recorder where the subject real property is located; and or the title guaranty or title insurance issued by a title insurer or title agent authorized to do business in the state of Nevada, the following is the (I) date, (II) recordation number (or other unique designation); and (III) assignee of each recorded assignment of the subject Deed of Trust:

| **Recorded Date** | **Recording Number** | **Name of Assignee (From/To)** |
|---|---|---|
| 11/15/2011 | 201111150002906 | Mortgage Electronic Registration Systems, Inc., as nominee for Alliance Bancorp, its successors and assigns/Aurora Bank FSB |
| 12/4/2012 | 201212040002280 | Aurora Bank, FSB/Nationstar Mortgage LLC |

Signed By: [signature] 6/26/14 Dated: 6/26/14

Print Name: Jesslyn Williams Assistant Secretary

STATE OF Texas )
) ss:
COUNTY OF Denton )

On this 26th day of June, 20 14, personally appeared before me, a Notary Public, in and for said County and State, Jesslyn Williams, known to me to be the persons described in and who executed the foregoing instrument in the capacity set forth therein, who acknowledged to me that he/she executed the same freely and voluntarily and for the uses and purposes therein mentioned.

MEGAN RENEE ENSENBERGER
Notary Public, State of Texas
My Commission Expires
December 15, 2015

[signature]
NOTARY PUBLIC IN AND FOR
SAID COUNTY AND STATE

Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

Propria persona

FILED
JUN 2 1:54 PM '15
CLERK OF THE COURT

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| **PRISCILLA SANTOS CORTEZ,**<br>Plaintiff,<br>vs.<br>NATIONSTAR MORTGAGE, LLC;<br>QUALITY LOAN SERVICING, LLC;<br>WEST COAST MORTGAGE GROUP;<br>ALLIANCE BANCORP;<br>AURORA BANK, FSB;<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;<br>ROSE VELLANOWETH;<br>and DOES 1-10, inclusive,<br>Defendants. | **CIVIL CASE NO.** A-15-718200-C<br>XIII<br>**NOTICE OF PENDENCY OF ACTION**<br>**(LIS PENDENS)** |

NOTICE IS HEREBY GIVEN that the above-entitled action concerning and affecting the title to and the real property itself, as described herein, was commenced on **May 11, 2015**, in the above-named court by Plaintiff, Priscilla Santos Cortez. The action is now pending in the above-named court.

The Real Property the subject of this action is commonly described as: **1020 Zurich Avenue, Henderson, NV 89015**, and legally described as:

**Lot Eight (8) in Block A of BOULDER CREEK 11, as shown by map thereof on file in Book 124 of Plats, Page 72, in the Office of the County Recorder of Clark County, Nevada.**

**A.P.N. 179-16-812-008.**

The object of Plaintiffs action in the above-entitled action is to quiet all claims of title adverse to that of the Plaintiffs claim.

Plaintiff further seeks an order enjoining Defendants and each of them and each of their agent, attorneys, successors and representatives and all persons acting in concert or participating with them from removing, evicting or in any way interfering with Plaintiff's quiet and exclusive possession and occupancy of the Subject Property, and Plaintiff's record title to the Subject Property.

Priscilla Santos Cortez
Priscilla Santos Cortez
4132 Calmoor Street
National City, California [91950]

**ACKNOWLEDGMENT**

STATE OF NEVADA )
) ss.
COUNTY OF CLARK )

On this 14 day of May, 2015, before me, Collette D. Putnam, a Notary Public, personally appeared **Priscilla Santos Cortez,** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by her signature on the instrument the person executed the instrument.

I certify under the PENALTY OF PERJURY pursuant to the Laws of the State of Nevada that the foregoing paragraph is true, correct and complete.

Collette (Seal)
Notary Public in and for the State of Nevada.
My commission Expires: 6/6/2016

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
COLLETTE D. PUTNAM
No: 04-87417-1
My Appointment Expires Jun. 6, 2016